# WINDHAM COUNTY.

## FEBRUARY TERM, 1843.

PRESENT HON. CHARLES K. WILLIAMS, *Chief Justice.*
    "     MILO L. BENNETT,    } *Assistant Justices.*
    "     WILLIAM HEBARD,  }

---

### CHARLES KIMBALL & CO. *v.* GATES PERRY, JR.

When a deputy sheriff sold goods on execution, on a credit of three months, by direction of plaintiff's attorney; — *Held,* that the sheriff was not responsible for his neglect to return the execution, &c., as he did not act officially.

The attorney of record of the plaintiff may, when the plaintiff lives at a distance, give such instruction to an officer as he thinks the interest of the client requires; and his directions to the officer, when he gives him an execution, in what manner to execute the same, will bind his client.

THIS was an action brought against the defendant, sheriff of Windham county, for the default of Eli B. Russell, his deputy, in not serving, collecting, and returning an execution in favor of the plaintiffs against one Daniel Upton, which had been put into his hands for that purpose. Plea, not guilty. Issue to the country.

On trial in the county court, the plaintiffs gave in evidence a regular attachment in their favor against said Upton, returnable to the April term, 1840, of Windham county court, which was duly served on the 16th day of March, 1840, by attaching the goods of Upton, subject to certain prior attachments; and being duly returned to said court, the plaintiffs perfected their judgment and took out an execution thereon, dated the     day of April aforesaid. The plaintiffs then gave evidence tending to show that they seasonably put said execution into the hands of said Russell, who was, at that time, a deputy of the defendant.

The defendant gave in evidence, on his part, the said prior attachments of the other creditors of Upton—the judg-

ments rendered thereon, and the executions taken out upon the same, together with the execution in favor of the plaintiffs ; by which it appeared, from a minute made by said Russell on each, that he received the same, as deputy sheriff, on the 25th day of April aforesaid, and made his return thereon, that he levied the same on the goods attached as aforesaid.

Kimball &Co.
v
Perry.

The defendant then offered testimony tending to show, that, at the time said executions were delivered to said Russell, he was directed by the other creditors, and by N. T. Sheafe, the attorney of record of the plaintiffs, whose name was on the back of their execution, as such attorney, to levy on said goods, and having duly posted the same, to sell the same on a credit of three months for all sums over five dollars, and that he did levy and sell accordingly ; and that, in pursuance of such direction, he did sell the goods on such credit, to divers persons at Bellows Falls, and in the towns adjoining thereto ; and he was then directed to go round to the several persons to whom the goods were sold, and take their notes therefor ; that, after selling for about six days, the vendue, by the direction of Mr. Sheafe, as attorney as aforesaid, and by direction of the attorneys for the other creditors, was again adjourned for one month, and, at the time to which the vendue was adjourned, he again sold on like credit, and again went round to the several persons to whom the sales were made, and obtained their notes for the amount of their bids. To this testimony the plaintiffs objected ; but the court decided that it was proper to be admitted, and, if believed by the jury, that the plaintiffs ought not to recover ; whereupon the plaintiffs entered a nonsuit, with leave to move the court to set the same aside and for a new trial, on account of the decision aforesaid ; — and the plaintiffs afterwards made their motion accordingly; but it was decided by the court that the motion should not be granted, but that the said nonsuit should stand ; and thereupon the court rendered judgment for the defendant. The plaintiffs excepted.

W. C. Bradley, for plaintiffs.

The plaintiffs contend that a new trial ought to be granted because the facts stated were not a sufficient bar to their action.

The delivery of the writ to the deputy; the receipt by him, as such; the levy, sale, and adjournment, were all regular and took place within the life of the execution.

1. The direction to sell *on credit* was not an act which divested the deputy of his official character, as representative of the sheriff, and converted him into the agent or broker of the plaintiff; for such sales are usual, beneficial, and of injury to no party. At most, they amounted to a consent of the plaintiffs to receive the securities taken for the sales, in lieu of money; and it was the duty of the deputy, before he parted with the goods, to have taken such securities. If he omitted this, and, by the plaintiffs' consent, advise, or even direction, still effected it within the life of the execution, the relative situations of the parties were not changed. He could not keep the securities on his *private* responsibility. And what becomes of the sales for sums less than five dollars?

In Massachusetts, where a writ was filled up provisionally, and delivered to a sheriff, with instructions not to serve till a certain time or contingency, the action was held not to have been commenced till the time of service. *Seaver* v. *Lincoln*, 21 Pick. 217. So in the cases which have occurred in this state, where the sheriff was decided not to be holden, it does not appear that they were absolutely received by the officer as such, for in *Strong* v. *Bradley*, Sheriff, 13 Vt. R. 9, he was in the first place, to exercise his discretion, whether he should serve, i. e. take the execution, as deputy sheriff, and execute it. So in *Fletcher* v. *Bradley*, sheriff, 12 Vt. R. 22, the sheriff was to manage discretionarily, and being either unwilling or unable to get collateral security as an agent, he proceeded to act as an officer, and executed his writ. In the present case, the deputy performed every essential act, as an officer; and to view him in any other light would make his levy and sale tortious, especially as no consent of the original debtor is shown.

2. If these directions were out of the regular course of proceeding by the sheriff, and would, if given by the plaintiffs, have discharged him, then we say, they were out of the course of regular proceeding by the attorney, acting under his general character, and could not bind the plaintiffs. There is no question, at this time, how far an attorney at law has authority to appeal, discontinue or manage the suit of

his client according to the forms and usages of the court, until he obtains a judgment. His authority in regard to the execution, is to have it collected in a legal way ; but he cannot cancel it in payment of his own debt. *Smock* v. *Dade*, 5 Rand. 639. He cannot, without the *manifested* consent of his client, discharge it for less than its face ; *Lewis* v. *Gamage*, 1 Pick. 347 ; 5 Pet. 113 ; nor release the sureties of his client's debtor ; *Givens* v. *Briscoe*, J. J. Marsh's R. 532 ; nor appoint an appraiser on the execution ; *Dodge* v. *Prince*, 4 H. R. 191 ; nor receive a bond from the debtor in discharge ; *Kirk* v. *Glover*, 5 Stew. & Port. 35 ; nor make his clients the bailiffs of their debtors, by receiving on the execution securities to collect, and thereby render them liable to an action of account ; *Langdon* v. *Potter*, 13 Mass. 320. What his known official character does not authorize him to do, the sheriff cannot take advantage of against his client ; and if the attorney at law direct the sheriff to discharge the debtor from custody, without any satisfaction or consent of the plaintiff, that officer, by knowingly doing so, becomes liable for an escape. *Kellogg* v. *Gilbert*, 10. J. R. 220 ; *Crary* v. *Turner*, 6 Id. 51.

As to not returning the execution, see also C. L. R. vol. 37, p. 206 ; *Holmes* v. *Clifton*, A. & E. 673.

*A. Keyes*, for the defendant, said there were two questions presented in the exceptions—1. Had the plaintiff's attorney power to direct the deputy to sell on credit ? 2. Did such direction exonerate the sheriff ?

As to the first point, he maintained that the latitude of the attorney's discretion is greater in relation to foreign, than other demands. In regard to the extent of his discretionary power, in various particulars, he cited 6 Johns. R. 53 ; 2 Ld. Ray. 1142 ; 1 Salk. 70, 89 ; 1 Bac. Ab. 299 ; Carth. 417 ; *Gorham* v. *Gale*, 7 Cow. R. 739 ; *Lynch* v. *Commonwealth*, 16 S. & R. 368 ; *Ewin* v. *Blake*, 8 Peter's R. 18 ; *Gray* v. *Was*, 1 Greenleaf, 257 ; *Crooker* v. *Hutchinson*, 1 Vt. R. 73 ; *Briggs* v. *Georgia*, 10 Vt. R. 70 ; *Crooker* v. *Hutchinson et al.* 2 Chip. R. 117 ; *Halker* v. *Parker*, 7 Cranch. 436.

He justified the discretion exercised in this case, by the considerations that the client resided at a distance, and that

WINDHAM, *February,* 1843.

Kimball & Co *v.* Perry.

there were a number of attachments, previous to his, upon the property, with little prospect that it would reach his client's execution, unless he gave the directions he did in regard to the time and manner of sale.

Upon the point, whether the attorney's directions exonerated the sheriff, he maintained that the sheriff is responsible only for the *official* acts and neglects of his deputy; Rev. Stat. 73; 4 Mass. R. 63;—and that when the deputy undertakes, by direction of plaintiff, to do official business contrary to the course prescribed by law, he is, *pro hac vice,* divested of his official character, and becomes the servant and agent of the plaintiff; 2 Esp. 591; 4 Term. R. 119; 4 Mass. 63;—and that, therefore, when plaintiff gives the deputy special instructions to sell upon credit, the sheriff is not responsible. To this point he cited *Gorham* v. *Gale,* 7 Cow. 739; *Marshal* v. *Hosmer,* 4 Mass. 63; *Walden* v. *Davidson,* 15 Wend. 579; *Cook* v. *Palmer,* 6 B. & C. 739; 7 D. & R. 133; *Fletcher* v. *Bradley,* 12 Vt. 22; *Downer* v. *Bowen,* 12 Vt. 453; *Strong* v. *Bradley,* 13 Vt. 9; *Porter* v. *Viner,* 18 Ch. 177.

He further maintained, that the allegations in the plaintiffs' writ were not sustained. It was alleged that the execution had been delivered to be executed, in due form of law, when the case showed that it was delivered to be executed, not according to law, but according to direction of the plaintiffs. It was alleged that the deputy made no return of the execution according to the precept thereof; but a plaintiff can recover no damage for non-return of an execution, when, by his own direction, he, in effect, releases the sheriff from making a return. It was alleged that the deputy never caused said sum, or any part thereof, to be paid to the plaintiffs. But for this the sheriff was not responsible. His deputy was directed to receive notes for the goods; and whatever responsibility existed for not collecting and paying over their amount, was the responsibility of the deputy as plaintiffs' agent, and not of the sheriff as for his official neglect.

The opinion of the court was delivered by

WILLIAMS, Ch. J. — In this case it appears, that after the plaintiff had made out a *prima facie* case, the defendant offered certain testimony, which was objected to. The court admit-

ted the same, and declared their opinion of the effect of it. The plaintiff then submitted to a nonsuit. No other state of facts are now to be considered, than those presented to the court at the trial. The plaintiff was not compelled to submit to a nonsuit, but was at liberty, after the testimony was admitted, to offer evidence of any other state of facts which might take his case out of the law as supposed in the opinion of the court. The object of exceptions is to bring before this court, the decision of the county court, on any question of law decided by that court; and they should be so drawn as to present those questions, and none other; and it is not to be expected that any questions are to be raised in this court which did not arise in the county court on trial, or that the exceptions should be so guarded as to exclude every possible conclusion which might be drawn from them.

The questions in the present case are, whether the defendant, as sheriff, is liable for the acts of his deputy, Russell, done under the instructions he received; and, whether the attorney of the plaintiff was authorized to give those instructions.

The sheriff is made liable only for the official acts and neglects of the deputies, and he is authorized to take bonds of indemnity of his deputies against their official misfeasances and nonfeasances. If the defendant is liable in this case, the sureties of Russell, the deputy, are responsible to him; and sureties are only held responsible according to the letter of their undertaking, which, in the present case, is only for the official acts, &c., of the deputy.

The duties of a sheriff, in the collection of executions, are pointed out by statute. He is to sell for money, and not for any other pay. He is to sell for cash, to be paid on delivery of the articles sold. Credit is unknown in the statute in sales by virtue of an execution. Hence there is no accountability for the value, or expense, of keeping property, as there would be, if he was directed to sell for collateral or specific articles, — no accountability for the responsibility of the persons to whom sold. No questions can arise, whether he conducted prudently in delivering the property sold without taking adequate security;—whether he was faithful in collecting, or what should be his compensation therefor. The risk is very trifling, when the sales are for cash, and

the creditor, as he usually is, is ready to receive the avails, as soon as the sales are perfected. But the risk is very great if the sheriff, or the sureties of the deputy, are to be held responsible when the sales are made in any other way.

The language of the American and English authorities is explicit on this subject. In the case of *Marshal* v. *Hosmer*, 4 Mass. R. 60, Parsons, C. J., said, a sheriff was not responsible for the act of his deputy, when the latter acted under a contract obliging him to do what, by law, he was not obliged to do. The same idea was repeated in the case of *Bond* v. *Ward*, 7 Mass. 129. The case of *Gorham* v. *Gale*, 7 Cow. 739, and *Walden* v. *Davidson*, 15 Wend. 579, are almost identical with the case under consideration. The cases of *Cook* v. *Palmer*, 6 Barn. & Cres. 739 ; *Porter* v. *Viner*, 1 Chitty's R. 613, *in notis*, are equally explicit. The subject has been under consideration in the courts of this state. The case of *Fletcher* v. *Bradley*, 12 Vt. R. 22, and the case of *Strong* v. *Bradley*, 13 Vt. R. 9, are authorities directly opposed to the plaintiffs' maintaining this action. The case of *Strong* v. *Bradley* again came before this court in 1842, and the court held that the letter of the attorney, mentioned in the case, did, *ipso facto*, discharge and release the sheriff from any liability. We do not perceive that the case of the *N. H. Savings Bank* v. ————, 1 Metcalf, 34, which has been sent to our room since the recess at noon, and but a short time before we came into court, contravenes the authorities. The deputy had, there, attached certain goods, subject to prior attachments. Under a statute of that state, similar to ours, with the consent of the creditor and debtor, he was authorized to sell the property attached, and hold the proceeds to be applied on the execution, instead of the property. The statute directed the sales should be made as on executions, — that is, at public auction. The creditors and debtors agreed the sales might be at private sale and public auction. The deputy sold partly at private sale and partly at auction, and neglected to pay over the money on the executions ; and it was held the sheriff was accountable. In that case, the duty of the deputy was plain to expose the goods to be taken in execution ; or, if he had received the value, to pay over the same. The court, however, in deciding that case, intimated that, in selling at private

sale, the deputy acted as the agent for the creditors, and had <span style="float:right">WINDHAM,</span>
paid to the prior attaching creditors an amount equal to what <span style="float:right">*February,*<br>1843.</span>
he had received at *private* sale, and said he had sold, at <span style="float:right">Kimball & Co</span>
public auction, enough to satisfy the plaintiff in that case. <span style="float:right">*v.*</span>
If, however, the decision was directly on the point involved <span style="float:right">Perry.</span>
in the case before us, its authority could not be recognized,
as we conceive it would controvert all the cases in New York,
in this state, and in England, to which I have referred.

This view of the case answers all the exceptions. There
was no offer to prove that the deputy had received any
money, by the sales, under five dollars, unaccounted for;
and his not returning the execution was consistent with the
instructions he received. In short, it cannot be contended
that he acted partly as deputy sheriff, and partly as agent for
the creditors. As Russell, the deputy, did not proceed in
the ordinary line of his duty, but deviated therefrom, and
proceeded in a way not known to the law, by the direction
of the plaintiffs' attorney, the defendant cannot be held ac-
countable, unless he should be considered as unjustifiable, in
consequence of his deputy's pursuing those instructions.

A question is, then, raised whether the attorney, Mr.
Sheafe, was authorized to give those instructions. Of the
authority of an attorney to give such instructions, at the
time he gives to the sheriff executions, and the duty of the
deputy to follow them, unless notified to the contrary by the
creditors, we have no doubt. An attorney, employed to col-
lect a demand when the creditor lives at a distance, and
cannot be consulted, combines the character of agent and
attorney. This was recognized in the case of *Briggs* v.
*Georgia,* 10 Vt. R. 70. In the absence of his employer, he
may pursue such a course as is apparently for the interest of
his employer, and such as he would probably direct, if present.
*Crooker* v. *Hutchinson,* 2 D. Chip. R. 117, and 1 Vt. R.73.
The attorney may direct on what property an execution
shall be levied — whether on land or personal property; and
that he may give instructions in relation to the levy, sale, and
service of the execution, appears from the cases of *Gorham*
v. *Gale,* 7 Cowen, 739, before mentioned; *Porter* v. *Viner,*
1 Chitty, 613, and *Strong* v. *Bradley.* Indeed, some of
these cases may be considered *ad idem* with the present.
The interest of the plaintiffs was undoubtedly considered, as

there were several attachments prior to theirs, and the sales on credit afforded the fairest prospect of their realizing the debt. It is not said, or pretended, that the attorney acted contrary to any direction, instruction, or wishes of the plaintiffs; but he acted in common with the other creditors. The execution was not discharged by giving those instructions; and the only effect was, that the plaintiff must resort to the deputy, and not to the sheriff, to recover whatever money, notes, or other securities, he may have received on those sales. Russell received the notes and securities as agent for the creditors, including the plaintiffs, and is entitled to a compensation for his services in his agency, to be adjusted in a suit between him and the creditors; but as he was directed to deviate from the course prescribed by statute, by the attorney having authority to give those directions, the defendant is not responsible.

The judgment of the county court is therefore affirmed.