## COCKERLINE *v.* FISHER.

1. LANDLORD AND TENANT—SUMMARY PROCEEDINGS—JUDGMENT—
EFFECT.

Where, on summary proceedings to recover possession of land
from a tenant, the tenant had judgment on other grounds
than that there was no rent due when the suit was instituted,
the judgment was not res judicata as to a claim for rent due
prior to its entry.

2. SAME—NONPAYMENT OF RENT—TERMINATION OF TENANCY—DE-
MAND.

Under section 11164, 3 Comp. Laws, authorizing the termination
of a tenancy for nonpayment of rent by a notice to quit or pay
rent, it is not necessary that a formal demand be made on
the premises as a prerequisite to re-entry.

3. SAME—AGENT OF LANDLORD—PAYMENT OF RENT.

Where a notice to a tenant to quit or pay rent was intrusted to
the agent of the landlord for service, and was served on the
premises, the tenant was entitled to treat such agent as hav-
ing authority to receive the rent and discharge his obligation
by making payment.

4. SAME—CONTRACT—CONSTRUCTION.

A contract by which plaintiff covenants to pay defendant two-
thirds of the income of a farm, unless otherwise specified, to
be paid when hay, grain, potatoes, hogs, wool, or any other
marketable product is sold, the toll to be first deducted, is a
lease.

5. SAME—RE-ENTRY—ARTIFICE—UNLAWFUL ENTRY.

Where a landlord had a right of re-entry for nonpayment of
rent at the time he induced his tenant and his family to leave
the premises in order that he might take peaceable possession,
and, had the tenant remained at home, it would have been
his duty to have delivered possession on demand of the land-
lord's agents, it was immaterial that the landlord induced
him by artifice to leave the premises.

Error to Oakland; Smith, J. Submitted February
10, 1905. (Docket No. 136.) Decided May 12, 1905.

Trespass quare clausum fregit by William Cockerline against Maxwell M. Fisher. There was judgment for plaintiff, and defendant brings error. Reversed.

*John H. Patterson* (*Fred A. Baker*, of counsel), for appellant.

*James H. Lynch*, for appellee.

MONTGOMERY, J. William Cockerline, the plaintiff, became the tenant of Maxwell M. Fisher under a contract dated February 1, 1899. The plaintiff covenanted and agreed to pay to defendant two-thirds of the income of said farm, unless otherwise specified, to be paid as follows, to wit:

"When hay, grain, potatoes, hogs, wool or any other marketable product is sold, the toll is to be deducted, and two-thirds of the balance paid to the party of the first part. Two-thirds of the milk and one-half of the eggs and increase of poultry is to be turned over to party of the first part."

November 3, 1900, Mr. Fisher gave Cockerline notice to quit and surrender possession "by reason of the violation by you of the terms and conditions of the lease bearing date February 1, 1899." April 18, 1901, another written notice to the same effect was given. October 3, 1901, a notice to quit and surrender "or pay the rent due me" was given by Fisher. The first two notices were served by George W. Fay, a deputy sheriff and constable, and the third notice was served by Victor Van Every, a deputy sheriff. The certificates of these officers show that the first and third notices were served on Cockerline at his residence in the township of Bloomfield, which was on the farm rented. July 17, 1901, Mr. Fisher instituted proceedings before a circuit court commissioner to recover possession. Cockerline entered a plea of not guilty. The case was tried on the 6th of September, 1901, before a jury, and a verdict of not guilty was rendered, when Fisher took

an appeal to the circuit court. After the service of the notice of October 3, 1901, to quit or pay the rent due, Mr. Fisher, October 12, 1901, commenced another suit before the circuit court commissioner to recover possession, which came on for trial under a plea of not guilty October 31, 1901. After the trial had commenced, this suit was discontinued by the counsel for the complainant.

While Cockerline and his wife were in Pontiac on October 31, 1901, to attend the trial before the commissioner, Mr. Fisher, by persons employed by him for that purpose, took peaceable possession of the farm. When Cockerline and his wife went to Pontiac, they left three children on the farm. Harry, aged 19 years, went with a team to a field about 20 rods from the house, and was engaged in rolling the field; Eleanor, aged 8 years, went to school; and Irene, aged 13 years, remained at the house. The persons employed to take possession for Mr. Fisher were Harry Schellenburgh and Ernest C. Miller, and it appears from their testimony and that of Harry Cockerline and Irene Cockerline that when Schellenburgh and Miller arrived at the premises they found Irene in the yard back of the house and Harry in the field; that Schellenburgh told Irene to go over to Albert Fisher's house, and stay with Fisher's daughter, Adelaide, which she did; that Miller went down in the field, and told Harry that he had taken possession for Mr. Fisher, and told him he had better go to Pontiac, and inform his folks, which he did. Schellenburgh and Miller then moved all of Cockerline's household goods and effects into the highway, and put a rope across the entrance to the premises, and when Cockerline came they prevented him from entering on the premises by threatening to use force if he attempted to do so; Schellenburgh being armed with a gun and Miller with a ball bat. Mr. Fisher has retained possession of the farm ever since.

This is an action of trespass, brought by Cockerline against Fisher to recover damages on the theory that the latter had no ground on which he could forfeit the lease,

and, if he did have good grounds for taking possession, he did so forcibly. The declaration contains four counts. The first two are in the usual form of trespass quare clausum, the only difference being that in the first count it is alleged that the defendant pointed a loaded gun at the plaintiff, and threatened to shoot him; and in the second count that allegation is omitted. The third and fourth counts are like the first and second, with a reference to section 11206, 3 Comp. Laws, and a claim for treble damages under that statute. At the trial in the court below before the Honorable George W. Smith, circuit judge, the counsel for the defendant, Fisher, offered "to prove that there was over $300 rent due at the time of the service of the notice October 3, 1901," but the circuit judge, on the objection of counsel for the plaintiff, excluded all evidence of rent due from sales made prior to the 6th day of September, 1901, on the theory that the judgment for the defendant, rendered on that day, in the first suit before the circuit court commissioner, was res judicata. It was, however, admitted that between the 6th of September and the 3d of October, $152.81 in cash came into plaintiff's hands from a sale of wheat and oats; two-thirds of which belonged to defendant. Plaintiff admitted that no money was paid over in pursuance of the notice of October 3d. Defendant offered to show that there was also a personal demand for rent made upon plaintiff July 17, 1901. The circuit judge excluded this testimony, and ruled, for the purposes of the trial, although expressing some doubt upon the first question, three things:

(1) That the first proceedings before the commissioner were res judicata of defendant's right to demand rent due up to September 6th.

(2) That the lease or contract being silent as to the place of payment, demand for the rent should have been made on the farm.

(3) That if the jury found that the purpose of the second suit was to entice plaintiff and his wife away from home, so that a peaceable re-entry could be made, and defendant entered, taking advantage of their absence, said entry was unlawful.

1. We do not find in the record that it was adjudicated in the first case before the commissioner that no rent was due at the time that suit was instituted. On the contrary, it does appear affirmatively that other grounds of defense were argued in that proceeding. We think it should not be said that if the plaintiff in fact had failed to pay over to the defendant the rent due prior to September 6th, the judgment of the commissioner, which determined simply that the defendant in this case was not at that time entitled to a judgment of restitution, necessarily discharged Cockerline from the obligation to pay the rent due. *McSloy* v. *Ryan*, 27 Mich. 110. This question is, however, of minor importance, as it appears by plaintiff's own testimony that at the time of the re-entry and of the service of the third notice there were funds in plaintiff's hands which it was his duty to pay over on proper demand.

2. We think the court was in error in holding that a personal demand on the premises was a prerequisite to the exercise of the common-law right of re-entry. The statute (3 Comp. Laws, § 11164) provides a means of terminating a tenancy for nonpayment of rent by a notice to quit or pay rent. It has been held in New York, under a similar statute, that a notice to deliver possession or pay rent takes the place of a formal demand on the premises. *Van Rensselaer* v. *Ball*, 19 N. Y. 100; *Van Rensselaer* v. *Snyder*, 13 N. Y. 299.

It is no stretch to say that when this notice was intrusted to the agent of the landlord for service, and was served upon the premises, the tenant had the right to treat such agent as having authority to receive the rent and discharge his obligation by making payment.

We do not overlook plaintiff's contention that the relationship existing between plaintiff and defendant was not that of tenant and landlord, but that they were tenants in common of the crops. We do not think the lease subject to this construction as to all of the crops or personal property. It is true that as to certain of this property they may have been tenants in common, but

under the terms of the lease above quoted Cockerline became the owner of the crops, with full power to sell and convert the same into money. *Witheral* v. *Booming Co.,* 68 Mich. 48-52. Moreover, the language of the instrument shows it to have been intended as a lease, and a right of security in case of a breach of the covenants or obligations is expressly reserved. Such an instrument is a lease if also something more. *Rowlands* v. *Voechting,* 115 Wis. 352.

3. It follows from what has been said that defendant had a right of re-entry on the 31st of October, 1901, under the holding in *Smith* v. *Loan & Building Ass'n,* 115 Mich. 340 (39 L. R. A. 410). Did he forfeit that right by the artifice practiced in instituting a civil suit to induce the plaintiff and his wife to leave home in order that he might regain possession ? No case in point is cited, and the question must be determined on principle. Of what does the plaintiff complain in this connection ? If he had remained at home, it would have been his duty to deliver possession on the demand of plaintiff's agents. He has no legal grievance for being deprived of the opportunity of making an unauthorized resistance to the exercise of a just right. The court was in error as to this question.

The other questions presented are not likely to again arise.

The judgment is reversed, and a new trial ordered.

CARPENTER, MCALVAY, GRANT, and HOOKER, JJ., concurred.