# THE FIRST NATIONAL BANK OF COOS BAY, a Corporation, v. JOHN F. HENRY.

(152 N. W. 668.)

Agent — agency — sale of land — authority — purchase price — no implied authority to receive — principal allowing agent to believe he has such authority — deemed to have conferred actual authority to receive it.

1. While, as a general rule, an agent authorized to negotiate a sale of land

Note.—Authority of a traveling salesman to receive payment, see note in 18 L.R.A. 663. As to authority of agent to accept payment in anything else than money, see notes in 18 L.R.A. 666; 19 L.R.A. (N.S.) 324; and 15 Am. Dec. 130. As to the authority of sales agent who is authorized to collect the whole or a part of the purchase price on making the sale to receive payments afterwards, see note in 38 L.R.A. (N.S.) 700.

On the question of payment to agent as a defense to an action by undisclosed principal, see note in 28 L.R.A. (N.S.) 230.

As to effect of fact that agent does not have possession of securities upon question of his authority to receive payment, see note in 23 L.R.A. (N.S.) 414.

has no implied authority to receive the purchase price, still where the principal, intentionally or by want of ordinary care, allows the agent to believe that he possesses such authority, the principal will be deemed to have conferred actual authority upon the agent to receive such payment.

**Agent — authority to receive payment — principal allowing purchaser to so believe — ostensible authority.**

2. And where the principal, intentionally or by want of ordinary care, causes or allows the purchaser to believe that the agent has authority to receive such payment, then the agent has ostensible authority to receive payment.

**Agent authorized to sell land — authority to receive check in part payment — how determined — circumstances.**

3. The authority of an agent who negotiated a sale of realty, to receive a check for the balance of the purchase price, after the delivery of the deed, like his authority generally, is to be determined in the light of all circumstances surrounding the parties and the transaction.

**Agent — authority — check in part payment — to receive and cash — balance of purchase price.**

4. It is *held* that under the evidence in the instant case, the agent had authority to receive and cash a check payable to the order of the principal for a balance of $150, remaining due upon a total purchase price of $6,650.

Opinion filed April 15, 1915.

From a judgment of the District Court of Nelson County, *Cooley,* J., defendant appeals.

Reversed.

*M. H. Brennan,* for appellant.

The agent Serumgard was authorized by his principal, Converse, to receive the check in payment of the balance due from the defendant; the principal permitted a course of business dealing in regard to the property and in regard to the negotiations for the sale thereof, as to evidence an ostensible agency on which the defendant might rely, and on the strength of which he might make payment to such agent with the same effect as though made to the principal. Grant v. Humerick, 123 Iowa, 571, 94 N. W. 510; Berkley v. Stewart, 94 Neb. 550, 143 N. W. 820; Harrison Nat. Bank v. Austin, 65 Neb. 632, 59 L.R.A. 294; Johnston v. Milwaukee & W. Invest. Co. 46 Neb. 480, 64 N. W. 1100; Walker v. Hale, 92 Neb. 829, 139 N. W. 658; Aldrich v. Wilmarth, 3 S. D. 523, 54 N. W. 811; Duncan v. Hartman, 143 Pa. 595, 24 Am. St. Rep. 570, 22 Atl. 1099.

It is not alone the actual authority that must govern, but, regardless of private instructions, it is the apparent authority permitted that controls. Griswold v. Gebbie, 126 Pa. 353, 12 Am. St. Rep. 878, 17 Atl. 673; Wachter v. Phœnix Assur. Co. 132 Pa. 428, 19 Am. St. Rep. 603, 19 Atl. 289; Lister v. Allen, 31 Md. 543, 100 Am. Dec. 78.

The defendant cannot be bound by conversations or instructions had between principal and agent in regard to which he knew nothing. The evidence was insufficient to justify the verdict, and if the testimony contains any evidence about which fair minds might differ on the question of actual or ostensible authority, the case should have been submitted to the jury.

Where the court directs a verdict for a party, the evidence of the opposing party, against whom the verdict is directed, must be considered as undisputed, and should be given the most favorable construction possible. Ney v. Eastern Iowa Teleph. Co. 162 Iowa 525, 144 N. W. 383; Pirie v. Gillitt, 2 N. D. 255, 50 N. W. 710; Vickery v. Burton, 6 N. D. 245, 69 N. W. 193; Scherer v. Schlaberg, 18 N. D. 421, 24 L.R.A.(N.S.) 520, 122 N. W. 1000; McRea v. Hillsboro Nat. Bank, 6 N. D. 353, 70 N. W. 813; Zink v. Lahart, 16 N. D. 56, 110 N. W. 931; Hall v. Northern P. R. Co. 16 N. D. 60, 111 N. W. 609, 14 Ann. Cas. 960; Carr v. Minneapolis, St. P. & S. Ste M. R. Co. 16 N. D. 217, 112 N. W. 972.

*Frich & Kelly,* for respondent.

An agency is either actual or ostensible. Rev. Codes 1905, § 5754, Comp. Laws 1913, § 6322.

An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another, who is not really employed by him, to be his agent. Rev. Codes 1905, § 5770, Comp. Laws 1913, § 6338.

A principal is bound by acts of his agent under a merely ostensible authority to those persons only who have in good faith and without ordinary negligence incurred a liability or parted with value upon the faith thereof. Rev. Codes 1905, § 5784, Comp. Laws 1913, § 6352.

The independent declarations, acts and conduct of the agent himself have no bearing upon the question and are not to be considered. Gordon v. Vermont Loan & T. Co. 6 N. D. 454, 71 N. W. 556.

Mrs. Converse did nothing, nor did she say anything, that led or

could lead Henry to believe Serumgard had authority to receive the payment in question. It is nowhere claimed that the power of attorney to Serumgard to collect rents, renew insurance and make leases, had such effect. Morris v. Ewing, 8 N. D. 99, 76 N. W. 1047.

One who makes payment to an agent must, at his peril, discover whether the agent has authority to receive payment at all, or to receive payment in anything but money. 31 Cyc. 1322–1324.

Agency will never be presumed; and where its existence is denied, the burden of proof is upon him who affirms its existence, and the proof must be clear and specific. Corey v. Hunter, 10 N. D. 5, 84 N. W. 570.

The principal's own admissions, whenever made, may be given against him; but the declarations of his agent bind him only when made during the continuance of the agency, and in regard to a transaction then pending, *et dum fervit opus.* 1 Greenl. Ev. § 113; Mechem, Agency, § 714; Short v. Northern P. Elevator Co. 1 N. D. 159, 45 N. W. 706.

Serumgard was not the actual or ostensible agent of Mrs. Converse for the collection of the money in dispute, and the payment of the same to him by Henry was voluntary. Crane v. Gruenewald, 120 N. Y. 274, 17 Am. St. Rep. 643, 24 N. E. 456; Brewster v. Carnes, 103 N. Y. 556, 9 N. E. 323; Bruen v. Kansas City Agri. & H. Fair Asso. 40 Mo. App. 425; Cummings v. Hurd, 49 Mo. App. 139; Cox v. Cutter, 28 N. J. Eq. 13; Corey v. Hunter, supra.

CHRISTIANSON, J. This is an appeal from a judgment of the district court of Nelson county. The case was tried to a jury and resulted in a directed verdict for the plaintiff. The following facts are undisputed,—or clearly established by the evidence. In August, 1911, and prior thereto, one Mrs. Esther B. Converse was the owner of a one-third interest in a business block in the city of Devils Lake. The defendant, Henry, was the owner of another one-third interest. It appears that the property formerly belonged to Mrs. Converse's husband, and that Mrs. Converse became owner as his heir. In the summer or fall of 1909 or 1910, Mrs. Converse came to Devils Lake, and retained Siver Serumgard, an attorney at that place, to take care of her interests in connection with this property and other matters incident

thereto,—including some difficulty she had had with the defendant, Henry, regarding the management of her husband's estate,—to collect a claim of $40 for certain alleged over-charges for probate expenses, and also suggested to Serumgard that he make a sale for her of the property in question. At that time Mrs. Converse retained Attorney Serumgard generally to look after all of her interest in connection with the management of the property, including any trouble which might thereafter occur. On the 1st day of August, 1911, Mrs. Converse executed and delivered to one W. S. Nicholson, her son-in-law, a power of attorney, giving him full and complete authority to lease, sell, and mortgage the property in such manner and on such terms as he might see fit. The power of attorney is very general and unrestricted in its scope, and gives to Nicholson complete power over the property. Shortly thereafter Nicholson came to Devils Lake and saw the defendant, Henry, and informed him that he and Mrs. Converse had appointed Attorney Siver Serumgard of that city as the agent of Mrs. Converse, to look after the rental of said property, collect rents, etc., and at the same time Nicholson did execute and deliver to Serumgard a power of attorney, giving him full and complete authority to collect the rents, pay taxes, renew insurance, see that the premises were kept in repair, and do everything necessary in caring for, managing, and renting the premises. Nicholson, together with the defendant, Henry, executed a lease for the property, and in the lease it was provided that the rental coming to Mrs. Converse was to be paid monthly at the office of Siver Serumgard, and it appears that during the rental period, such rents were, to the knowledge of the defendant, Henry, paid to Serumgard. In the fall of 1912, the defendant commenced certain improvements in the property, and on September 14, 1912, Serumgard, at the request of Nicholson and Mrs. Converse, served upon the defendant, Henry, and the contractors performing the labor, a notification protesting against the making of the improvements. Subsequent thereto negotiations for the sale were instituted, with the result that Mrs. Converse sold her interest in the property to the defendant, Henry. Such negotiations were apparently instituted, as the result of a certain letter written by Nicholson to Serumgard, dated September 30, 1912, wherein, after stating that Mrs. Converse is not in financial condition to permit the improvements sought to be made by Henry to be constructed, he goes on and makes the following proposition of sale: "The property shows a valuation of $25,000 on rentals. She will do this,

take $7,000 for her interests, cash net, or she will take a first mortgage on the whole property of $7,000, at 8 per cent, payable in three years, interest payable semiannually through the First National Bank of Coos Bay, Marshfield, Oregon. Or she will continue to hold her interests as the property now is, without any improvements, until such time as we can buy out the other interests. Replace green shed with corrugated iron sheeting, and fix the wall, which ought to be done for about $300. *Will ask you to guard Mrs. Converse's interests. . . ."* Thereupon negotiations were commenced by Siver Serumgard, acting for Mrs. Converse, with the defendant, Henry, for a sale of the property. Offers and counter-offers were made, until finally the price of $6,650 was agreed upon, on October 12, 1912. Some delay occurred in completing the deal, and apparently there was some further misunderstanding between the parties as to the details·in closing the transaction. On October 29, 1912, Nicholson wrote Serumgard as follows:

Siver Serumgard,
    Devils Lake, N. D.
Dear Sir:—

Your letter of the 11th at hand and as I had your telegram of later date accepting a cash offer I did not think necessary to reply. However there was nothing of importance in it, as it has all been gone over thoroughly. Now as they have taken everything in their hands, *will ask you as our agent* not to sign for any improvements whatever and to continue to remonstrate on any being done. *Tell me what is necessary on our part to get the case in U. S. Court if Henry does not accept deed sent him through First Nat. Bank.*

Yours truly,
W. S. Nicholson.

It appears also that the defendant, Henry, was requested to send the money to the plaintiff bank, to be turned over upon the execution of a deed by Mrs. Converse. This the defendant refused to do, and on October 30, 1912, the defendant, after depositing the amount of the purchase price agreed upon in the Devils Lake State Bank, prepared and served a notice of deposit and demanded a delivery of the deed.

This notice was addressed to Esther B. Converse, and Siver Serumgard and W. S. Nicholson, her agents. The notice was served on Siver Serumgard, who admitted due and personal service as agent for Mrs. Converse. Immediately after the receipt of the notice Serumgard wired Nicholson as follows:

Devils Lake, N. D.
Oct. 30–31, 1912.

W. S. Nicholson,
    Marshfield, Ore.

Henry to-day served notice of deposit of purchase money in Devils Lake State Bank; demands immediate delivery of deed by Esther B. Converse; refuses to send money to Marshfield; law here upholds him. Will you send deed? Answer. Next step will be action for specific performance.

Siver Serumgard.

In accordance with Serumgard's telegram the papers were transmitted to the First National Bank of Devils Lake, with instructions to deliver the same to the defendant, Henry, upon the payment of the sum of $6,500. It appears that the deed was transmitted by the plaintiff bank, and that, through some error on its part, the Devils Lake Bank was instructed to collect only $ 6,500. The defendant, Henry, called at the First National Bank of Devils Lake about November 9, 1912, paid this amount, and received the deed. Shortly after receiving it, he observed that the bank had collected only $6,500, whereas the purchase price agreed upon was $6,650, or a difference of $150. Immediately on discovering the mistake the defendant, Henry, went to the First National Bank of Devils Lake to pay the $150. The trial court refused to permit it to be shown whether or not the bank declined to accept this money, but apparently it must have refused to accept it, otherwise it would doubtless have been paid. Thereupon Henry went to the office of Siver Serumgard and paid the $150 to him by giving him a check payable to Mrs. Esther B. Converse. Serumgard afterwards cashed the check he received from defendant in the same manner in which he had always cashed checks payable to her order received for rent, by indorsing the same, "Esther B. Converse, by Siver Serumgard,

Agent." On November 13, 1912, Nicholson wrote Serumgard a letter wherein he, after referring to the mistake of $150, goes on to say:

Of course Judge Henry will make his offer good, as I have turned the telegrams and letter over to them where he was to pay $6,650, Net, while they collected only $6,500. If he neglects to make this discrepancy good, we can add it to the amount he has taken in rents during the past three years, and make a case out of it, although I had hoped we were through with him after consummation of sale. Of course we do not blame him for the bank's blunder, but when shown this error it will be up to him to make his acceptance good. Mrs. Converse joins me in thanking you for the care you have taken of our interests. I remain                                        Yours truly,
                                            W. S. Nicholson.

Mrs. Converse and Nicholson were living somewhere in the state of Oregon during this time, and the defendant had no knowledge of their residences or whereabouts, but all the negotiations regarding the purchase of the property had been had by the defendant, Henry, solely with Serumgard as the agent of Mrs. Converse. In fact, every transaction of every kind which he had had in regard to this property since the fall of 1909 or 1910 had been had with Serumgard as her agent. The defendant, Henry, had been dealing with Serumgard for two years and over,—first, as attorney, in general charge of the affairs of Mrs. Converse, and next as her agent in general charge of her interests at that place. The notices served by Mrs. Converse were signed by Serumgard; the notice served on Serumgard as her agent, regarding the sale of the property, was recognized by her, and the deed forwarded to Devils Lake for delivery in accordance with the demand of such notice. Serumgard retained the proceeds of the check as part of his alleged commission for making the deal, and notified Nicholson of this fact. Under the original arrangement between Serumgard and Nicholson it was agreed that Serumgard should receive 10 per cent of the moneys collected for his services. Nicholson claims that this applied only to moneys collected for rent, and had no application to a sale. Nicholson claimed that Serumgard is entitled to no commission for making the sale, and refused to pay any; he thereupon, as agent for

Mrs. Converse, assigned the claim against Henry for the $150 balance on the purchase price to the plaintiff bank, who brought this action therefor as such assignee.

While numerous errors are assigned upon rulings of the trial court in the admission and rejection of evidence and failure to suppress depositions, still the principal question presented is whether or not a verdict should have been directed in favor of the plaintiff. A determination of this question depends solely upon whether or not Serumgard, as agent of Mrs. Converse, had authority,—either actual or ostensible,— to receive the check from the defendant, Henry, for $150, the balance of the purchase price.

Agency is either actual or ostensible. Comp. Laws, § 6322. An agency is actual when the agent is really employed by the principal. Comp. Laws, § 6323. An agency is ostensible when the principal, intentionally or by want of ordinary care, causes a third person to believe another to be his agent, who is not really employed by him. Comp. Laws, § 6324. An agent has such authority as the principal actually or ostensibly confers upon him. Comp. Laws, § 6336. Actual authority is such as a principal intentionally confers upon the agent, or intentionally or by want of ordinary care allows the agent to believe himself to possess. Comp. Laws, § 6337. Ostensible authority is such as the principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess. Comp. Laws, § 6338. It is undisputed that Serumgard, who is an attorney at law, located at the city of Devils Lake, was originally retained as an attorney by Mrs. Converse in the fall of 1909 or 1910. The employment of Serumgard at that time was with respect to the property involved in this litigation. The relations then entered into continued unbroken up to the time the defendant, Henry, delivered the check for $150 to him. The various dealings in regard to this property and other affairs of Mrs. Converse largely relate to the defendant, Henry, and all the transactions which he had in regard thereto were had with Serumgard as her attorney and agent. It should also be remembered that the sale grew out of the very matter wherein Serumgard had actual authority to represent Mrs. Converse, and also that he had actual authority to negotiate the sale. It is conceded that Serumgard had not only ostensible, but actual, authority to collect rents, make repairs, insure, and generally manage the property. In the various letters written to him by Nicholson, while

the deal for the land was pending, he expressly instructed Serumgard to "guard Mrs. Converse's interests," and referred to him as "our agent." Mrs. Converse expressly recognized or ratified the authority of Siver Serumgard to negotiate the sale, and recognized the service upon him as her agent of the notice of deposit and demand for the delivery of the deed. This notice was apparently construed as a preliminary step on the part of Henry before instituting an action for specific performance. The letters written by Nicholson show that Serumgard was recognized not only as their agent, but also as an attorney, and certainly no limitation is attached to his powers, in the letters or in any form conveyed either to Serumgard or Henry. Mrs. Converse recognized the authority of Serumgard to negotiate the sale, and accepted the benefits thereof, hence, she is estopped to say that Serumgard was not fully authorized to negotiate the sale, and she ratified his acts by accepting the benefits. Townsend v. Kennedy, 6 S. D. 47, 60 N. W. 164; Union Trust Co. v. Phillips, 7 S. D. 225, 63 N. W. 903; Wyckoff v. Johnson, 2 S. D. 91, 48 N. W. 837; McLeod v. Morrison, 66 Wash. 683, 38 L.R.A.(N.S.) 783, 120 Pac. 528. And therefore when Henry paid the money to Serumgard he was justified in believing that Serumgard had actual authority to make the sale, to admit service of the notice of deposit and demand, and that service of such notice upon Serumgard was deemed by Mrs. Converse to be service upon her. He also had notice of the fact that Serumgard was generally authorized to manage all of her business interests in connection with this property; had authority to collect moneys due her for rents and other indebtedness, and had authority to receive checks payable to her order in payment of such claims. While it is true that an agent authorized to negotiate a sale as a rule has no implied authority to receive the full purchase price, yet it is held that he has authority to accept so much of the purchase price as is to be paid in hand. Alexander v. Jones, 64 Iowa 207, 19 N. W. 913; Rodgers v. Bass, 46 Tex. 505; Clark & S. Agency, § 231. See also Little Rock & Ft. S. R. Co. v. Wiggins, 65 Ark. 385, 46 S. W. 731.

It is true the deed was sent to the First National Bank of Devils Lake for delivery. This bank had no former connection with the deal. Its connection was limited and its instructions specific. The bank collected $6,500, which concededly was all it was authorized or directed

to collect, and apparently refused to accept the remaining $150. To whom would defendant naturally go, if not to the person with whom the deal had been made? Mrs. Converse had clearly held Serumgard out as having authority to collect claims for her, and generally manage her business, and to make sale of this property. She saw fit to employ a special agency to deliver the deed, and collect the greater portion of the purchase price,—the small balance remaining would of itself be a circumstance which would justify the defendant in paying this money to Serumgard, as he might well presume that this represented his compensation in the matter. Having paid to the bank the sum it had been instructed to receive, he fulfilled the requirement thus made, and extinguished the authority of, and duty imposed upon, the bank as such special agency. There was no other person, with whom he had dealt, except Serumgard,—who had been vested with authority to collect rents, and other claims, and to manage and sell this property. The fact that Mrs. Converse and Nicholson were living at a great distance, and had generally authorized Serumgard to represent them in the various transactions enumerated, and led defendant to believe that he had authority to manage and look after Mrs. Converse's interests generally, is a matter which may be taken into consideration in determining the ostensible authority of such agent. Carr v. Eastabrook, 2 Cox, Ch. Cas. 390; De La Viesca v. Lubbock, 10 Sim. 629; Kimball v. Perry, 15 Vt. 414. Serumgard was acting not only as agent, but also as attorney for Mrs. Converse. This fact is expressly recognized by Mr. Nicholson in his letters, and was recognized and acted upon by Serumgard and the defendant, Henry. His authority as an attorney was in connection with Mrs. Converse's matters in general. All these matters must be taken into consideration in determining whether or not it was within the scope of the authority of Serumgard to receive the $150 check. Because the authority of the agent to collect moneys, or receive payment, like his authority generally, is to be determined in the light of all circumstances surrounding the parties, and the business transactions. Walker v. Hale, 92 Neb. 829, 139 N. W. 658; First Nat. Bank v. Mutual Ben. L. Ins. Co. 145 Mo. 127, 46 S. W. 615; Davis v. Waterman, 10 Vt. 526, 33 Am. Dec. 216; Bridenbecker v. Lowell, 32 Barb. 9; Valiquette v. Clark Bros. Coal Min. Co. 83 Vt. 538, 34 L.R.A.(N.S.) 440, 138 Am. St. Rep. 1104, 77 Atl. 869. So, in the case of Cockerline v.

Fisher, 140 Mich. 95, 103 N. W. 522, the supreme court of Michigan held that "where a notice to a tenant to quit or pay rent was intrusted to the agent of the landlord for service, and was served on the premises, the tenant was entitled to treat such agent as having authority to receive the rent, and discharge his obligation by making payment." In Merritt v. Adams County Land & Invest. Co. 29 N. D. 496, 151 N. W. 11, this court held that, under the facts in that case, one Jackson had ostensible authority to receive payment for lands. See also Grant County State Bank v. Northwestern Land Co. 28 N. D. 479, 150 N. W. 736. Clark & Skyles on Agency, (§ 231), in discussing this matter says: "But where the principal has held the agent out as having such authority, or where he has permitted the agent to so hold himself out, or where the principal has otherwise conducted himself so as to lead third parties to believe that the agent has authority to receive payments on land sales he will be estopped from denying it to the prejudice of one who has acted thereon; and a payment made by the purchaser to an agent under any of the above circumstances will protect such purchaser. Thus, a company is estopped to assert that its agent had not authority to receive deferred payments on land sales, though he had originally no authority therefor; he having on several occasions collected and remitted them without objection from the company, having in some instances been requested by the company to collect some small balances, and it having been known that payment by other persons had been made to him before those in question, and had been recognized by the company. *So, the fact that an agent had managed the rental of his principal's property for several years, and collected the rent, is sufficient to show his authority to collect the purchase price of the property when sold by him as her agent."* See also Beck v. Minnesota & W. Grain Co. 131 Iowa, 62, 7 L.R.A.(N.S.) 930, 107 N. W. 1032; Trankla v. McLean, 18 Misc. 221, 41 N. Y. Supp. 385; McCarty v. Stanfill, 19 Ky. L. Rep. 612, 41 S. W. 278. It should also be remembered that Henry did not pay the money to Serumgard, but gave him a check payable to the order of Mrs. Converse. Henry delivered this check to the same person, who had admitted service on the notice of deposit as the agent of Mrs. Converse,—and who as her agent had negotiated a sale of this property, and represented her, both as her agent and attorney in the entire transaction. What

was the actual authority of Serumgard, and what was his duty as agent for Mrs. Converse with reference to receiving the check from the defendant, Henry, when he found that the bank had received instructions to collect only $6,500 or $150 too little? The defendant, Henry, had the deed. He could place it on record, and sell or encumber the premises to third parties. Serumgard had received instructions to "guard Mrs. Converse's interest." He had the letter from Nicholson of October 29th, strongly intimating that Mrs. Converse desired to bring an action against Henry, to compel performance on his part of the contract of sale in the event he refused to accept the deed. He was aware of the general authority with which he had been invested by Mrs. Converse. We are satisfied that he was justified in believing that he was authorized to receive and cash the check as he did. Whether or not he was entitled to a commission for his services is not involved in this case, and would not in any manner affect his ostensible authority, and not necessarily his actual authority, to receive and cash the check. When all the facts in this case, including the relations of the parties and surrounding circumstances, are taken into consideration, we are entirely satisfied that the defendant, Henry, was justified in delivering to Serumgard the $150 check; and that it was within the scope of the authority of Serumgard to indorse the check. Harbach v. Colvin, 73 Iowa, 638, 35 N. W. 663; National F. Ins. Co. v. Eastern Bldg. & L. Asso. 63 Neb. 698, 88 N. W. 863. It follows from what has been said that it was error to render judgment against the defendant. The judgment appealed from is reversed, and inasmuch as the evidence affirmatively discloses that the facts necessary to constitute a cause of action do not exist, the District Court is directed to enter final judgment in favor of the defendant, and against the plaintiff, dismissing the action, with costs.