PELAVIN *v*. MISNER.

1. FORCIBLE ENTRY AND DETAINER—POSSESSION OBTAINED BY TRICK
AND MAINTAINED BY FORCE.

Where the owners of an apartment building, the lessee of
which was in arrears for rent, taxes, and insurance, under
a false pretense, enticed the lessee's wife outside the build-
ing, locked her out, and forcibly prevented her from going
about her usual duties therein, the possession thus obtained
by trick, even if peaceable, being maintained by threat of
force, is not such as can be recognized as valid, but it
is a forcible entry and detainer.

2. EQUITY—INJUNCTION—IN SUIT TO MAINTAIN POSSESSION DE-
FENDANTS IN CROSS-BILL MAY CLAIM FORCIBLE ENTRY AND DE-
TAINER AND SEEK DAMAGES.

Where the owners of a building, in a suit to enjoin the
lessee from interfering with their possession, set up a
peaceable entry and possession, defendant, by cross-bill,
has a right to claim that the possession was gained by
forcible entry and detainer and seek damages therefor.

3. APPEAL AND ERROR—CASE REMANDED TO COURT BELOW TO DE-
TERMINE DEFENDANT'S DAMAGES.

Where, in the court below, the owners of a building were
granted an injunction restraining the lessee from inter-
fering with their possession, and, on appeal, the decree is
reversed, and one entered declaring that plaintiffs' posses-
sion was obtained by forcible entry and detainer, the case
is remanded to the court below to determine defendant's
damages, as claimed under his cross-bill.

BIRD and McDONALD, JJ., dissenting.

Appeal from Wayne; Mandell (Henry A.), J.    Sub-
mitted April 26, 1927.    (Docket No. 25.)    Decided
January 3, 1928.    Rehearing pending.

Bill by Samuel Pelavin and others against Richard

---

[1]Forcible Entry and Detainer, 26 C. J. § 58; [2]Equity, 21 C. J.
§ 613; Injunctions, 32 C. J. § 563 (Anno); [3]Appeal and Error,
4 C. J. §§ 3230, 3234.

A. Misner and others to enjoin an interference with plaintiffs' possession of property. Defendants filed a cross-bill to establish a forcible entry and detainer, and for an accounting. From a decree for plaintiffs, defendants appeal. Reversed and remanded.

*Chawke & Sloan,* for plaintiffs.

*Daniel P. Cassidy,* for defendants.

BIRD, J. (*dissenting*). Plaintiffs own the Harding apartments, in the city of Detroit, the estimated value of which is $375,000. On the 12th day of July, 1922, they leased the building to defendant Misner for a period of 15 years at a monthly rental of $2,900 and the taxes and insurance. The lease was the ordinary real estate lease of such property. The lessee soon proved to be a slow payer. He was in default each month until a proceeding was commenced against him before a circuit court commissioner. He paid the taxes only in part and defaulted on the insurance. It was also shown that the lessee misused and seriously damaged the premises, and that during the time he occupied them they gathered a very unfavorable reputation on account of the immorality of women, who lived or visited there. The prosecuting attorney of Wayne county finally filed a bill to get permission to padlock it on this account. Plaintiffs soon grew very tired of this sort of a tenant, and, on December 10, 1923, plaintiff Samuel Pelavin and his attorney went to the apartments. They found Mrs. Misner, the wife of defendant, in charge. Plaintiff Pelavin introduced his attorney to her as a prospective purchaser and requested her to show him around the apartments. She complied, and, on the pretext of examining something on the outside of the building, they went into the alley to inspect it, and when Mrs. Misner and the attorney were once outside Mr. Pelavin closed the door

and locked it.    In this way Mr. Pelavin took possession of the premises.    When Mr. Misner returned from the city he was denied admission.    He made threats that he would regain possession and that he would kill plaintiff Pelavin.    This bill was then filed for a temporary and permanent injunction, prohibiting defendant from interfering with plaintiffs' possession. Defendant answered and filed a cross-bill, claiming plaintiff took possession by force, and that he was entitled to be repossessed of the property.    He claimed in his cross-bill that he was in arrears for only two months' rent, and plaintiff refused to accept that unless he would make certain payments on the furnishings, and he prayed for an accounting.

Upon the hearing the court refused to go into the question of accounting, but did take the proofs on the question of forcible ejection.    He did not decide that question, however, but did order a decree protecting plaintiffs in their possession by continuing the injunction.

When the proofs were closed the chancellor should have determined the question of forcible entry and detainer, because that was the principal issue in the case.    Had he found that plaintiff secured possession forcibly in violation of the statute, that would have been an end to the controversy, because, however clear plaintiff's right was to possession, he had no right to acquire it by force.    If he found the possession was obtained peaceably this would not justify a continuance of the injunction unless he further found that plaintiffs were entitled to the possession by reason of the failure of defendants to comply with the provisions of the contract, and that the same had been forfeited.

Defendants insist that possession was obtained by plaintiffs by force.    The proofs on that question do not show any force was used.    No force was offered and none was threatened.    The possession was really

gained by strategy or trick, but was gained peaceably. There may have been some force used to keep the possession after it was obtained, but this was permissible. *Hoffman* v. *Harrington,* 22 Mich. 52.

"To render an entry forcible it must be accompanied either by actual violence, or by circumstances tending to excite terror in the owner or other persons in possession, and to prevent them from maintaining their rights. There must be at least apparent violence or some unusual weapons, or the attendance of an unusual number of people; some menaces or other acts giving reasonable cause to fear that the person making the forcible entry will do some bodily harm to those in possession, if they do not give up the same." 19 Cyc. p. 1136.

See, also, *Cockerline* v. *Fisher,* 140 Mich. 95; *Marsh* v. *Bristol,* 65 Mich. 378; *Gillespie* v. *Beecher,* 85 Mich. 347; *Smith* v. *Loan & Building Ass'n,* 115 Mich. 340 (39 L. R. A. 410, 69 Am. St. Rep. 575); *Pendill* v. *Union Mining Co.,* 64 Mich. 172.

If the injunction was to be continued the question then arose as to the right of possession. This depended on the question whether defendant was in default on his lease, and whether it had been forfeited. The testimony on this question should have been taken by the court and the question decided. The case should be remanded for proofs on that question. If found not in default defendant should be put into possession again. If found in default on his lease the present decree should be affirmed. Costs of this court should abide the finding on this question.

McDONALD, J., concurred with BIRD, J.

WIEST, J. The question here presented is: May a landlord, if rent is unpaid and the tenant is guilty of permitting an improper use of the premises, visit the premises leased, request the wife of the tenant in charge of the premises to step outside of the

building to show a pretended purchaser where repairs are needed, then lock the door and when the woman immediately enters by opening another door with a latch key, forcibly prevent her from going upstairs and thereby obtain a possession recognized as valid and to be maintained under injunctive process from a court of equity? I think not. Such an invasion, under color of a legitimate purpose, supplemented by stratagem or trick, carried out under a false pretense and successful for a moment only, did not result in a possession recognized by the law. But, even if a peaceable entry, it was followed by a forcible detainer when the entrant evinced the purpose by force, if necessary, to prevent the wife of the lessee from going about her affairs in the building. I think the evidence in this case shows a forcible entry and detainer.

This court said in *Seitz* v. *Miles,* 16 Mich. 455, and repeated it in *McIntyre* v. *Murphy,* 153 Mich. 342:

\* \* \* "but if the entry be obtained by stealth or stratagem, or without real violence, and the party entering evinces his purpose in having entered to have been the expulsion of the party in possession, and it is followed up by actual expulsion by means of personal threats or violence, or superior force, it will amount to a forcible entry."

The act of entry is coupled with the act of expulsion when the acts are contemporaneous or so close in point of time as to constitute one occurrence. There was a forcible entry and detainer and the court below should have so held. On this point we need but quote from the testimony of Leonard C. Lendzion, a witness for plaintiffs:

"I am a lawyer. \* \* \* I went to the Harding apartments in the city of Detroit on the 10th day of December, 1923, in company with Mr. Pisula and the Pelavin Brothers, Sam and Morris. When we got to the building, Sam and myself went in first. The others remained outside—where I don't know. \* \* \*

Mrs. Misner was in the lobby in the building when we got there. Sam Pelavin informed Mrs. Misner that I was a buyer, and then she immediately proceeded to show me through some apartments and after noticing two or three apartments, then Mr. Pelavin stated that I was very much interested in the boiler or the steam plant, and I said yes, * * * and so we went down through the corridor and down into the boiler room and there we looked around, and I was mostly interested in the janitor to see if he was around there, and he wasn't there. And after remaining in the boiler room about two minutes, then Mr. Pelavin stated that there was something wrong with the walk in the rear of the building. I believe he said the cornice or some part of the walk. And Mrs. Misner was surprised to hear that and I said that I would like to see it. And then Mr. Pelavin led Mrs. Misner and myself towards the rear door. Mrs. Misner and myself went out, and after we were out I heard the door slam, and a thud—presumably a lock of some kind was latched. And Mrs. Misner got out maybe five or ten feet from the sidewall of the building in the alley towards Cass avenue and she looked up, and so did I. Asked me if I seen anything wrong, and I said 'No.' At that time we were in the alley. I know where the court is—we had gone out through the court—we had to to see that side of the building. * * * Then I handed Mrs. Misner a paper and told her that I was delegated to serve her with that paper, and she accepted it, and while she was reading it, I told her what it was, informed her of the fact that it was a forfeiture of the lease for nonpayment of certain instalments on furniture and rents. * * *

"*Q.* After you served the notice upon Mrs. Misner, did Mrs. Misner say anything?

"*A.* Yes. She said that, 'Then this is nothing but a ruse,' or some language to that effect. Perhaps, maybe, the word 'trick' was used 'to get me out.' I says, 'That is it, exactly,' and then told her perhaps some day she might be in the same position as the Pelavin Brothers and would resort to the same thing. And altogether I would say that we were out there about five minutes. * * * And then we walked down the alley, that is, the alley towards the front of

the building. * * * and Mrs. Misner went into the vestibule. * * *

"Q. And what is your estimate of the length of time that elapsed between your going out of the Harding Apartments with Mrs. Misner and your leaving the premises, at which time Mrs. Misner was still in the vestibule?

"A. At least ten minutes."

Tricks and stratagems have been employed to get possession but never so bald-faced and inept as in this instance.

The Pelavins were guilty of a forcible entry and detainer, and their asserted peaceable entry and possession was but a travesty. The decree here should so declare and the case should be remanded to the circuit to determine the damages occasioned defendants Misner. Plaintiffs claim this may not be done, although asked by the answer in the nature of a cross-bill. In the bill plaintiffs set up a peaceable entry and possession and obtained an injunction, and defendants Misner had a right to traverse the claim and seek their damages in the very suit and forum selected by plaintiffs. Defendants Misner should recover costs of this court.

FELLOWS, CLARK, and SHARPE, JJ., concurred with WIEST, J.

The late Justice SNOW and Justice STEERE took no part in this decision.