NATIONAL FIRE INSURANCE COMPANY v. EASTERN BUILDING & LOAN ASSOCIATION.*

FILED JANUARY 22, 1902. No. 10,992.

Commissioner's opinion, Department No. 3.

1. **Demurrer Ore Tenus: CONSTRUCTION.** Where a petition assailed for the first time by a demurrer *ore tenus*, interposed at the close of the testimony, it will be construed liberally and in the light of the entire record.

2. **Construction of Petition: ANSWER.** Where, from the nature of the answer and the testimony adduced, it appears that both parties have placed the same construction on a petition, the court should not ignore such construction in passing on such demurrer, even though the petition standing alone might not admit of such construction.

3. **Agent: ATTORNEY: NEGOTIABLE PAPER: PAYMENT: DRAFT: INDORSEMENT: IMPLIED AUTHORITY.** Ordinarily an agent or attorney has no implied authority to bind his principal by the

*Rehearing allowed. Reversal sustained.

indorsement of negotiable paper, but an attorney who has authority to collect a claim from a corporation, and who, in the adjustment thereof, receives a draft from the adjusting agent of such corporation, drawn on the paying agent thereof, for the amount of such claim, has implied authority to bind his principal by an indorsement of such draft, made to enable him to receive the amount due thereon.

ERROR from the district court for Douglas county. Tried below before KEYSOR, J. Reversed.

Lodowick F. Crofoot and Thomas Creigh, for plaintiff in error.

E. G. McGilton and James McCabe, contra.

ALBERT, C.

At the time of the loss by fire, hereinafter mentioned, the residence of A. A. McKim was insured against loss or damage by fire in the National Fire Insurance Company. The policy contained a clause whereby the loss, if any, should be payable to the Eastern Building & Loan Association, mortgagee, as its interest might appear. On the 8th day of February, 1895, the residence was destroyed by fire. Both the insurance company and the loan association were notified of the loss, and within a few days thereafter the adjuster of the insurance company and one W. J. Trotter, representing the loan association, and the assured, McKim, met and adjusted the loss at the agreed sum of $435. Thereupon the adjuster drew a sight draft on the general agent of the insurance company for that amount, in favor of McKim and the association, which is as follows:

"No. 2362.        GOTHENBURG, NEB., Feb. 21, 1895.

"Pay to the order of A. A. McKim, and the Eastern Building & Loan Association, four hundred thirty-five and no-100 dollars ($435) in full satisfaction for all claims or demands for loss or damage by fire. Value received, and charge to the account of policy No. 223833 of the National Fire Ins. Co.        THEO. GARDNER, Adjuster.

"To FRED. S. JAMES, General Agent,

"174 La Salle Street, Chicago, Ill."

When the draft was drawn, but before delivery, McKim objected to its delivery to Mr. Trotter until the loan association should furnish him with a statement of his account with such association and with a release of the mortgage. Thereupon, by agreement of parties, the draft was deposited with one Lloyd, cashier of the local bank, to be held by him until the association and McKim could agree upon the division of the proceeds. The negotiations which followed between McKim and the association, relative to the share they should be paid, respectively, from said proceeds, extend over a considerable period. Pending those negotiations, it was agreed between Trotter and McKim, that Lloyd should present the draft for payment, and hold the proceeds until the division should be agreed upon. In pursuance of this plan, McKim indorsed the draft in his own behalf, and Mr. Trotter in behalf of his client, the loan association, and instructed Lloyd to present it for payment. Whereupon the draft was forwarded to the insurance company, and paid by it, and the proceeds credited to McKim and the loan association on the books of the said local bank. Afterward a division was agreed upon and McKim's share was paid to him, and the share of the loan association was paid to its attorney, Mr. Trotter. It appears that Mr. Trotter at the time had an account against the loan association for services rendered, and retained this money to apply thereon. Within a reasonable time, after learning of the facts, the loan association repudiated the act of Mr. Trotter in the indorsement and collection of the draft, and brought this action against the insurance company to recover the amount represented by said draft. At the close of the testimony, the defendant moved the court to direct a verdict in its favor. The motion was overruled. Thereupon a like motion was made by the plaintiff, which was sustained, and a verdict was rendered in accordance therewith, in favor of the plaintiff, for the full amount represented by the draft, with interest. From the judgment rendered on this verdict, the defendant prosecutes error to this court.

It is first urged that the court erred in overruling defendant's demurrer *ore tenus*. This demurrer was interposed after both parties had rested. The petition is long, and, as the case must be reversed, we think, on other grounds, it would serve no useful purpose to set out the petition at length in this opinion. It will suffice, perhaps, to say that had the demurrer been interposed before the introduction of any testimony, or before the parties had developed their respective theories of the case, it should have been sustained. But coming, as it did, at the close of the testimony, we can not ignore the construction placed upon the petition by the parties to the suit, as evidenced by the answer and the nature of the evidence introduced. Interposed at so late a day, the pleading assailed should be scanned in the light of the entire record, and the court should give it such construction as the parties themselves have seen fit to place upon it, although, standing alone, it might not admit of such construction. Viewed in that light, the demurrer, in our opinion, was properly overruled.

The principal contention is on the question whether Mr. Trotter had authority to indorse the draft hereinbefore mentioned on behalf of the loan association. Many cases are cited in support of the doctrine that an agent or attorney can not bind his principal by the indorsement of commercial paper without express authority. But it seems to us that in the citation of these cases counsel overlook the fact that Mr. Trotter was employed by the loan association to adjust the loss, and to collect the amount due them on the policy of insurance. His authority in that behalf, is not questioned. The so-called "draft" was nothing more than an order from one department of the insurance company to another to pay the loss in the amount agreed upon by the parties in the adjustment thereof. It was in no sense a payment, but an order for payment. It had been competent for the insurance company to pay Mr. Trotter the whole amount due the loan association in money, because, on the face of the evidence, he was, at least, ostensi-

bly authorized to receive it. It seems to us, that where, in the exercise of his ostensible authority, he agreed upon the adjustment of the loss with one department or agency of the insurance company, and, as evidence of such agreement, received an order from one department of insurance company upon another department of the same company for the payment of the money, his indorsement of such order was a mere matter of form, to enable him to effect the purpose for which he was employed by his client. Had the draft been put in circulation and payment refused, and were this an action whereby it was sought to hold the loan association liable as indorser on the draft, an entirely different question would be presented.

Much stress is laid by counsel on the correspondence between Mr. Trotter and the loan association, relative to the draft in question, from which it would appear that the indorsement was unauthorized. But it must be kept in mind that this took place after the loss was adjusted and the draft drawn, and after it had been made manifest that Mr. Trotter had full authority to collect the amount due the loan association on the policy of insurance. It does not appear that this correspondence was ever brought to the notice of the insurance company, nor that it had notice of any limitation on his authority in the premises. He had ostensible authority to collect the money in the first instance. The insurance company had a right to act on his ostensible authority until it had notice of wherein such authority differed from his actual authority. The fact that, having authority to collect the insurance for the loan association, the amount due was ascertained by an agent of the company, who thereupon directed another agent of the company to pay such amount, would not alter the case so long as the insurance company had no notice that his authority in the premises had been curtailed. If we are correct in those views, payment to Mr. Trotter was payment to the plaintiff, and the court erred in directing a verdict in its favor.

It is unnecessary to discuss other questions raised by

the record, as they are not likely to arise on another trial.

We recommend that the judgment of the district court be reversed, and the cause remanded for further proceedings according to law.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings according to law.

REVERSED AND REMANDED.