## 11566

### CHARLESTON PAINT CO. v. EXCHANGE BANKING & TRUST COMPANY

(123 S. E., 830)

1. BANKS AND BANKING—WHEN BANK RECEIVING TRUST FUNDS LIABLE FOR TRUSTEE'S DEFALCATION STATED.—A bank receiving trust funds showing on their face that they are trust funds is liable to owner for Trustee's defalcation if bank violates deposit contract or appropriates fund, either with or without Trustee's consent, to payment of Trustee's debt to bank, or assists Trustee to accomplish misappropriation with actual or constructive knowledge of fraud.

2. BANKS AND BANKING—ENTRY OF TRUST FUNDS TO CREDIT OF DEPOSITOR'S ACCOUNT AS ATTORNEY HELD NOT VIOLATION OF DEPOSIT CONTRACT.—Where attorney, having an individual account and an account as attorney, indorsed a check, payable to him as attorney for a client, for deposit to his account as attorney for the client, bank's entry of check to credit of his account as attorney *held* not violation of deposit contract.

3. ATTORNEY AND CLIENT—ATTORNEY WITH AUTHORITY TO INDORSE CHECK MAY DEPOSIT IT TO HIS OWN ACCOUNT.—An attorney, with authority to make alteration in or indorse a check as attorney for client, has authority to deposit proceeds either to his individual account or to his account as attorney.

---

Note: On applicability of deposits to indebtedness of one depositing in his own name the funds of another, where the bank has no actual notice of the true character of the funds, see notes in 39 L. R. A. (N. S.), 409; L. R. A. 1915A, 715, 722.

On liability of bank for application of deposit to pay fiduciary's debt to the bank, see note in L. R. A. 1915-C, 525.

4. BANKS AND BANKING—BANK MAY ASSUME FIDUCIARY WILL FAITH-
FULLY DISBURSE TRUST FUNDS.—A bank, even with knowledge of
existence of a trust, may safely assume that, although deposit is
entered to Trustee's account as an individual or as attorney, he
will faithfully disburse it.

5. ALTERATION OF INSTRUMENTS—ALTERATION OF CHECK HELD MA-
TERIAL; ALTERED CHECK VOID.—An alteration of a check payable
to order of named payee, so as to make it payable to payee's at-
torney, *held* a material alteration amounting to a forgery, under
Negotiable Instruments Law, §§ 124, 125, and check was void
except as to holders in due course.

6. BILLS AND NOTES—BANK COLLECTING ALTERED CHECK HELD NOT
"HOLDER IN DUE COURSE."—A bank collecting a check which bore
unmistakable evidence that it had been altered *held* not a "holder
in due course" under Negotiable Instruments Law, §§ 52, 124.

7. BANKS AND BANKING—BANK RESPONSIBLE TO TRUE OWNER FOR
PROCEEDS OF ALTERED DEPOSITED CHECK.—If alteration in check
making it payable to payee's attorney rather than original payee,
was made by such attorney without authority, the transfer of the
check by the endorsement of the attorney, when he deposited it in
his account as attorney in defendant bank, carried no title; and
the bank, having received the proceeds of the check and paid them
out upon such attorney's orders, was obligated to account therefor
to original payee.

8. BANKS AND BANKING—BANK LIABLE FOR PROCEEDS OF FORGED
CHECK, IRRESPECTIVE OF LACK OF KNOWLEDGE OF FORGERY.—Liabil-
ity to true owner of check, which because of alteration was a
forged instrument, of bank which had collected it and paid out
the proceeds to one depositing it, was not affected by the bank's
actual or constructive knowledge or lack of knowledge that the
check had been forged, for, if forged, it was void, regardless of
bank's diligence or negligence in discovering the forgery.

9. BANKS AND BANKING—BANK ASSISTING FIDUCIARY WITH ACTUAL
OR CONSTRUCTIVE KNOWLEDGE OF FRAUD HELD LIABLE.—A bank is
liable when with knowledge of a trust it violates deposit contract,
or has actual or constructive knowledge that a fraud is being
or is about to be perpetrated by fiduciary, and assists fiduciary
in making a misappropriation.

10. BANKS AND BANKING—WHETHER BANK'S NEGLIGENCE IN NOT AS-
CERTAINING ALTERATION WAS CONSTRUCTIVE KNOWLEDGE OF BREACH
OF TRUST HELD FOR JURY.—Whether bank's negligence in not ascer-
taining material alteration in check deposited amounted to con-
structive knowledge of breach of trust *held* for jury.

292 Charleston Paint Co. *v.* Exchange, etc. Co.

Arguments—Opinion                              [129 S. C.

11. Banks and Banking—Instruction as to Duty of Collecting Bank to Pass on Genuineness of Check Held Error.—An instruction that, if collecting. bank's contract with its depositors was to accept checks on other banks for collection only, it was not charged with duty of passing on genuinenss of checks or alterations in the body of the check, *held* error, in view of Negotiable Instruments Law, § 124.

Before Rice, J., Charleston, April, 1923. Reversed and remanded.

Action by the Charleston Paint Co. v. Exchange Banking and Trust Co. Judgment for defendant, and plaintiff appeals.

*Mr. Lionel K. Legge,* for appellant, cites: *Bank can only pay check drawn in strict accordance with deposit:* 39 L. R. A., 84; 49 N. E., 202; 3 R. C. L., 551; L. R. A. 1915-C, 519; L. R. A. 1916-F, 1059. *Charge on facts:* 78 S. C., 241; 99 S. C., 221. *Jury should have been charged as to constructive notice binding bank:* L. R. A. 1915-C, 518; 37 L. R. A. (N. S.), 409; 3 R. C. L., 551.

*Messrs. Mitchell & Horlbeck,* for respondent, cite: *Remarks of Court in overruling motion for nonsuit and directed verdict are not error:* 61 S. C., 117; 82 S. C., 321; 78 S. C., 505; 80 S. C., 386; 71 S. C., 136; 81 S. C., 374; 73 S. C., 379. *Bank is chargeable only after actual notice:* 43 S. C., 233; 41 S. C., 177; 12 Rich., 518; 56 S. C., 337; Morse, Banking, 317; 190 Mass., 479; Negotiable Instrument Act, Secs. 52, 56. *Where check is paid by bank on which it is drawn defendant had right to assume that it was correct:* 92 N. E., 12; 80 S. W., 604; 218 N. Y., 106; 123 Pac., 352.

August 7, 1924.

The opinion of the Court was delivered by Mr. Justice Cothran.

Action to recover the proceeds of a certain check drawn by L. D. Long & Co. upon South Carolina Loan & Trust Company, payable to Charleston Paint Company, dated April

1, 1920, for $974.55, deposited by W. L. Rodrigues with the defendant bank, and passed to his credit as attorney under the following circumstances:

In March, 1920, Charleston Paint Company placed in the hands of W. L. Rodrigues, an attorney, for collection, an account against L. D. Long & Company. He presented the claim to Long & Company and received in payment thereof the check above described. For some reason, not explained. Long & Company drew the check payable to the order of Charleston Paint Company. On April 3, 1920, Rodrigues, as the plaintiff alleges, altered the check by inserting in his own handwritng, over the name of the payee, the words, "W. L. Rodrigues, Atty. for," making the check payable to "W. L. Rodrigues, Atty. for Charleston Paint Co." He then indorsed the check: "For deposit a/c W. L. Rodrigues, Atty. for Charleston Paint Co. W. L. Rodrigues, Atty."

Rodrigues had in the bank two deposit accounts—one in his individual name, and the other in his name as attorney. He had none in his name as attorney for Charleston Paint Company. At the time of making the deposit he made out a deposit slip, directing the bank to pass the check to the credit of his account as attorney, which was done. The check was duly passed by the defendant bank through the clearing house and paid by the South Carolina Loan & Trust Company, upon which it was drawn. Between April 3, 1920, and June 16, 1920, Rodrigues drew out the entire deposits to his credit and was overdrawn $47.04, all of which he had appropriated to his own use, having remitted to his client nothing on account of the collection.

The plaintiff then in February, 1921, having ascertained the foregoing facts, brought this action against the defendant, the collecting bank, to recover the amount so collected, basing its action upon two grounds: (1) That the bank knew or should have known, from the form, appearance, and contents of the check, that it had been altered and that the proceeds belonged to the payee. (2) That the bank

failed to comply with the terms of the indorsement which required the deposit to be made upon the account of Rodrigues as attorney for the plaintiff.

It is apparent from a bare inspection of the check that it was originally drawn payable to the order of Charleston Paint Company. It is equally apparent that some one, in a different handwriting, with a different colored ink, and at some unascertained time, inserted upon the face of the check the words indicated. It is possible that this was done by authority of the parties to the note; it is also possible that it was a bald forgery, made with a preconceived purpose on the part of Rodrigues to get possession of the money and embezzle it. So that two possible theories are presented: (1) That the check was passed from Long & Co. to Rodrigues in its present condition, payable "to the order of W. L. Rodrigues, Atty. for Charleston Paint Company."; or (2) that, after it was passed by Long & Co. to Rodrigues, payable "to the order of Charleston Paint Co.," it was altered without authority by the insertion of the words above referred to, making it payable "to the order of W. L. Rodrigues, Atty. for Charleston Paint Co."

Both theories depend upon issues of fact which this Court is powerless to determine. It becomes necessary therefore to declare the law applicable to them severally.

Assuming then, for the moment only, that the first theory is correct, namely, that the check was passed from Long & Co. to Rodrigues in its present shape, that the alteration was authorized, making it payable to "W. L. Rodrigues, Atty. for Charleston Paint Co.," it would have then borne upon its face evidence that the money belonged to Charleston Paint Company; that Rodrigues occupied a fiduciary relation to his client; in other words, that it was trust funds. A bank receiving trust funds under such circumstances is liable to the true owner for the dafalcation of the trustee, if any of the following conditions existed: (1) That the bank violated the terms

of the deposit contract.   (2) That the bank appropriated the fund, either with or without the fiduciary's consent, to the payment of the latter's debt to the bank.   (3) That the bank assisted the fiduciary to accomplish the misappropriation, having knowledge, actual or constructive, that the fraud was being, or about to be, perpetrated by the fiduciary, L. R. A., 1915C, 518 (note).

There is no evidence tending to suggest that the bank appropriated the trust funds to a debt which Rodrigues owed it; and that condition may be dismissed from consideration.

The plaintiff complains that the bank did not comply with the deposit instructions contained in the indorsement, and is therefore liable for the consequent misappropriation of the money by Rodrigues.   The indorsement is peculiar: "For deposit. a/c W. L. Rodrigues, Att." for Charleston Paint Co., W. L. Rodrigues, Atty."   The plaintiff contends that this constituted a specific direction to the bank to deposit the check to the credit of "W. L. Rodrigues, Atty. for  Charleston Paint Co."; that it did not do so, but entered it to the credit of "W. L. Rodrigues, Atty.," by which he was enabled to withdraw the fund and misappropriate it.

It is not at all clear that by this indorsement Rodrigues intended that the bank should open a new account in his name as attorney for the Charleston Paint Company.   He had no such account in the bank, and there does not appear any reason or necessity for opening one.   Clearly what he intended was to have the check deposited to the credit of his account as attorney which is demonstrated by the deposit slip which he made out at the time, directing such course.   This purpose would have been more clearly defined if the signatures of the indorsement had been transposed.   Such manifestly was his purpose, as indicated by the deposit slip and the action of the bank.

That Rodrigues, with authority to make the altera-
3, 4 tion or to indorse the check as it originally stood as
attorney for the paint company, would have had
authority to deposit the proceeds of the check either to his
individual account or to his account as attorney, there does
not appear a doubt. *Crane Boylston & Co. v. Moses,* 13
S. C., 561; *J. L. Mott Iron Wks. v. Bank,* 78 Wash., 294;
139 Pac., 36. *U. S. F. & G. Co. v. Adoue* (Texas), 37
L. R. A. (N. S.), 409 (note). *Bischoff v. Bank,* 218 N.
Y., 106; 112 N. E., 759; L. R. A. 1916F, 1059. *Batch-
elder v. Bank,* 188 Mass., 25; 73 N. E., 1024. *Havana
Co. v. Trust Co.,* 123 C. C. A., 72; 204 Fed., 546; L. R.
A. 1915B, 715, 720; L. R .A. 1915C, 528 (note "c").
The bank, even with knowledge of the existence of the
trust, may safely assume that, although the deposit may
be entered to the credit of the fiduciary's account as an
individual, or as attorney, he will faithfully disburse it.

The case of *Duckett v. Bank,* 86 Md., 400; 38 Atl., 983;
39 L. R. A., 84; 63 Am. St. Rep., 513, strongly relied upon
by the plaintiff, is an exceedingly interesting and instruc-
tive one, but there is a feature in that case which distin-
guishes it from the one at bar, in that there the direction
of the deposit was controlled by the drawer of the check,
and not as here by the supposed payee and indorser. The
deposit contract in that case could not be altered by the fi-
duciary, while here the fiduciary made the deposit contract.
In that case the trust estate consisted in part of a mortgage;
the trustee foreclosed the mortgage and received in satis-
faction of the debt a check payable to the cashier of a bank,
who was directed by the terms of the check to deposit the
amount to the credit of Henry W. Clagett, Trustee. The
trustee had no account as such with the bank, and the
cashier passed the check to the credit of Clagett's individual
account, which was drawn upon from time to time and,
after his removal as trustee, it was discovered that the fund
had been dissipated and spent. The substituted trustees

made demand upon the bank for a restitution of the amount of the check, claiming that the bank was accountable therefor because it had wrongfully placed the proceeds thereof to Clagett's individual account instead of to his account as trustee, and had thereby aided and participated in his breach of trust, and instituted suit.

The Court held: "Whoever knowingly aided him, or knowingly participated with him, in misapplying that fund, is, by reason of so aiding and so participating, equally liable with him to make the fund good by restoring it to the trust estate; and that by reason of the unauthorized diversion, the bank was liable.

"We do not think, therefore, that it can be said that the bank either violated the terms of the deposit contract, or that its action in depositing the check to the credit of "W. L. Rodrigues, Atty.," amounted to a participation in, or a facilitation of, the misappropriation; assuming, of course, that the alteration was properly made.

But the second possible theory above referred to, namely, that after the check was passed by Long & Co. to Rodrigues, payable "to the order of Charleston Paint Co.," it was altered without authority by the insertion of the words referred to, making it payable "to the order of W. L. Rodrigues, Atty. for Charleston Paint Co.," presents a much more serious question. If this alteration was made by Rodrigues, or by any one else without the authority of Long & Co. or Charleston Paint Company, an alteration in a material element of the check, amounting to a forgery, was effected; and under the express provisions of Section 124 of the Negotiable Instruments Law (Section 3775, Vol. 3, Code of 1922), the check was avoided, except as to holders in due course, not parties to the alteration.

Under Section 52 of the Negotiable Instruments Act (Section 3703, Vol. 3, Code of 1922), a transferee cannot be considered a holder in due course, unless

the instrument is complete and regular upon its face and unless he had no notice at the time of "any infirmity in the instrument or defect in the title of the person negotiating it." Neither of these conditions could have been present in this transaction. The check was not complete and regular upon its face, for it bore unmistakable evidence that it had been altered, whether innoctntly or not; and this displayed an infirmity, a characteristic which required explanation (authorization or ratification), a matter affecting the holder's itle.

The bank cannot, therefore, be considered a holder in due course, under the protection of Section 124, Negotiable Instruments Act, and, if the alteration was made by Rodrigues, without authority, and in a material particular as it appears, the transfer of the check by the indorsement of Rodrigues carried no title; the property of the paint company in it never passed, and the bank, having received the proceeds of the paint company's property, and paid them out upon the orders of Rodrigues who had no title, must account therefor.

In *Farmer v. Bank*, 100 Tenn., 187; 47 S. W., 234, it is held (quoting syllabus):

"Where a bank accepts a check bearing a forged indorsement, and places it to the credit of one presenting it, and has it collected, it is liable to the true owner, though it acts in good faith and without knowledge of the forgery."

In 1 Morse, Banking, § 248, it is said:

"If a negotiable instrument, having a forged indorsement, come into the hands of a bank, and is collected by it, the proceeds are held for the rightful owners of the paper, and may be recovered by them, although the bank gave value for the paper or has paid over the proceeds to the party depositing the instrument for collection."

See, also, *Talbot v. Bank*, 1 Hill (N. Y.), 295; *Shaffer v. McKee*, 19 Ohio St., 526. *Johnson v. Bank*, 6 Hun (N. Y.), 124. *Bobbett v. Pinkett*, 1 Ex. Div., 368. *Jackson*

*v. Bank,* 92 Tenn., 154; 20 S. W., 802; 18 L. R. A., 663; 36 Am. St. Rep., 81.

*Buckley v. Bank,* 35 N. J. Law, 400; 100 Am. Rep., 249, was a case where a check, with the name of the payee forged upon it, came to the possession of the defendant innocently, and was collected by it. Having done so, it was compelled to respond to the claim of the true owner upon his discovery of the loss and fraud, though the bank had already accounted for the proceeds to the party from whom it had obtained possession. The Court said:

"It is clear, then, that nothing passed to the defendants by virtue of the forged indorsement. The plaintiff's right to the check remained precisely as it was before his name was forged. The check, therefore, when the defendants obtained the money on it, was the property of the plaintiff, and in that case he may, as we have seen, recover the amount in this action, as money received by the defendants to his use."

That the alteration was a material one, under Section 125 of the Negotiable Instruments Act (Volume 3, Code of 1922, § 3776), is beyond dispute, as it necessarily changed the relation of the paint company to the check. As the check originally stood, it was payable to the order of the paint company; as altered, the paint company could not have collected it, as it then became payable only upon the order of Rodrigues as attorney for that company.

We have endeavored to sustain the bank's immunity from liability in this matter, upon the theory that Rodrigues as attorney for the paint company, in the collection of the account against Long & Co., had authority to indorse the check in the name of the paint company by himself as attorney; and that if he, without authority, altered the check as indicated, he thus accomplished a result within his authority. (Upon the question of the authority of an attorney to indorse a check delivered to him, payable to his credit, in settlement of an account placed in his hands for collection,

see *Brown v. Grimes,* 74 Ind. App., 655; 129 N. E., 483. *National Bank v. Old Town Bank,* 112 Fed., 726; 50 C. C. A., 443; 6 C. J., 659. *Jackson v. Bank,* 92 Tenn., 154; 20 S. W., 802; 18 L. R. A., 663; 36 Am. St. Rep., 81; *National Co. v. Eastern Co.,* 63 Neb., 698; 88 N. W., 863. *Farmer v. Bank,* 100 Tenn., 187; 47 S. W., 234, as to which it is not intended to make an authoritative declaration.) But the insuperable obstacle stubbornly remains that, if Rodrigues made the alteration, he committed a forgery, and he cannot justify it by the claim that he could have accomplished the same result in a legitimate way. If he had done what he had the right to do, the suspicions of the bank would not have been aroused, and it would have been. protected. If he did what amounted to a crime, the question is insistent, Should it not have warned the bank of an intended embezzlement?

If the check was a forged instrument it was void, regardless of the diligence or negligence of the bank in the matter of the discovery of the forgery. The bank's title to the check, and its right to retain the proceeds of it, depended upon the validity of that check. The learned Circuit Judge charged the jury that the bank would not be liable unless it knew, or should have known, that the check had been forged. In this he was in error for the reason stated above.

An exception assigns error in the following charge: "Unless the bank had knowledge that a fraud, such as a breach of trust, was being attempted by the agent, it was bound to honor any checks he might draw; mere negligence on its part is not sufficient to hold the bank liable for a misappropriation of the funds by the agent."

This exception is well taken. A bank is liable not only under the circumstance detailed above—that is, when with knowledge of the trust it violates the deposit contract—but also when it has knowledge actual or constructive, that a

fraud is being, or is about to be perpetrated by the fiduciary, and assists the fiduciary in making the misappropriation.

If the check in its original form showed that it was the property of the paint company, and that it had been altered in a material particular, so as to permit another to realize upon it, it was for the jury to say whether or not the negligence of the bank in not ascertaining such alteration amounted to constructive knowledge of the breach of trust threatened. A man rarely forges an instrument innocently; his malevolent purpose may well have been inferred from the criminal act.

An exception assigns error in the following charge: "If the jury find the defendant bank's contract with its depositors was to accept checks on other banks for collection only, then it was not charged with the duty of examining and passing upon the genuineness of the check or as to alterations in the body of the check."

The exception is well taken. The charge is in direct conflict with Section 124 Negotiable Instruments Act (Section 3775, Vol. 3, Code of 1922), which provides that an altered check is void except in the hands of a holder in due course.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.