Counsel for appellant, in reply brief, cite: As to failure oftrial Judge to direct verdict for plaintiff: 2 A.J., 811; (Differentiates between case at bar and defendant's authorities as follows, to wit, 23 Fed. Sup., 844 (D.C.W.D.S.C.);216 N.C. 246, 4 S.E.2d 863 (1939).
May 6, 1942. The opinion of the Court was delivered by
The record of this appeal unfolds a sordid story of the long extended defalcations of a trusted officer of the plaintiff corporation. He was in its service for about twenty-two years during the last four of which he grossly betrayed his trust. The corporation opened a deposit account with the defendant in January, 1935, and in that connection a signature *Page 23 
card was executed whereby the depositor agreed, among other things, that: "The signatures of persons authorized to draw checks which the bank will recognize in payment of funds or for the transaction of other business on account of the undersigned are hereby given below." Then followed the signatures: "H. Gordon Kenna, Vice-Pres. Gen. Mgr.; C.M. Young, Assistant Secretary; F.B. Fitch, Assistant Secretary." Later during the period involved Young was also apparently given the office and title of assistant treasurer, which he appended after his signature in behalf of the corporation.
There was, however, also filed with the bank a copy of a resolution of the board of directors of the depositor, meeting in Houston, Texas, certified by Mr. Kenna in his official capacities, whereby the opening of the account by him or by any assistant treasurer was authorized with further provision as follows: "All checks, drafts, withdrawals and other orders upon such account shall be signed by any two of the following officers of this corporation: The President or a Vice-President, together with the Secretary and Treasurer, or an Assistant Secretary and Treasurer."
The testimony tends to show that soon after the opening of the account in 1935 in addition to the usual payroll checks drawn by the plaintiff corporation, payable to Young and endorsed by him, he would present a check or checks on another bank payable to the corporation and endorsed in the name of the latter by himself as assistant treasurer, and at first and usually always with them a payroll memorandum or change slip setting forth the denominations and amounts of money desired, the total amount in each instance being the aggregate of the payroll and of the other check or checks, expressly in some cases according to the testimony and impliedly in the others representing to the bank that the total amount of cash received was for the purpose of meeting the payroll of the corporation, and the bank would pay the total to Young who converted the surplus funds over the payroll to his own use. *Page 24 
This nefarious practice was continued by him until its discovery as the result of an audit of the affairs of the corporation in 1939, and he coolly confessed his peculations in his testimony in the trial of this case. The latter developed one hundred and sixteen customers' checks aggregating $10,207.81, the proceeds of which were paid to Young over the stated period and embezzled by him.
It was undertaken to explain in the testimony that Young was able to conceal his abstractions because he was in charge for the depositor of its books and records and bank account. Failing to credit the checks embezzled to the storage accounts of the customers who had sent the checks by mail to plaintiff, he would later credit such accounts with the proceeds of other customers' checks similarly received, thus postponing the evil day of disclosure; and it is explained that no effort was made by the corporation to reconcile its accounts receivable, which consisted of storage charges on cotton, and that such would be most difficult because the warehouse receipts which were issued were negotiable and it had no means of knowing the holder; and that except for government agencies, customers paid no storage charges until the cotton was withdrawn from the warehouse and, with the exception noted, even annual storage bills were not rendered. The shortage in plaintiff's funds was thus hidden in the accrued storage accounts.
After the bank declined to accept liability for Young's defalcations plaintiff brought suit for the amount stated predicated first upon the above-quoted provision of its resolution that the signatures of two of its officers were required for withdrawals from its bank account and in the nature of contract, but the complaint also contains allegations of negligence on the part of the bank in cashing the checks for Young upon his endorsement alone as assistant treasurer; and there was no requirement of an election as to what cause of action would be relied upon. The last mentioned is important, as will be seen. *Page 25 
The case came on for trial upon the complaint and answer, which latter, full though it was, need not for the purpose of this decision be further referred to; and at the conclusion of the testimony both plaintiff and defendant moved for directed verdicts in their favor, respectively, and the presiding Judge construed the action as being one in contract and relying upon the provision of the signature card quoted above, directed the verdict in favor of the defendant; but he said in his discussion that considering the action as one for negligence, the testimony was not susceptible of a reasonable inference of negligence on the part of the bank which acted in accord with the requirement of the signature card, and that therefore any ruling which he might make upon the alleged contributory negligence of the plaintiff would be academic.
The plaintiff appealed from the judgment entered upon the directed verdict upon numerous exceptions which it has reduced in argument to three questions, submitted as follows: (1) Was there error in the ruling that the complaint stated a cause of action only on contract? (2) Did the Court err in refusing to direct the verdict in favor of the plaintiff? And (3) should not the trial Court at least have submitted the case to the jury? These questions have all been considered in the light of the record but in view of the conclusion reached, need not be discussed separately.
There is, as indicated, a controversy preliminary to the meat of the case. Respondent contends that the appellant's complaint is upon contract and that it cannot rely upon so-called negligent acts of the bank. As before stated, the learned Circuit Judge took this view and said in his order directing a verdict for the defendant that he construed the complaint to be a cause of action upon a contract, the agreement between the depositor and the bank, evidenced by the writings aforementioned; and that the allegations of negligence were relevant only to, and a part of, the allegation of violation of the contract or agreement whereby the bank obligated that funds should be withdrawn *Page 26 
from the deposit account only upon two signatures.
However, we agree with appellant that it is entitled to whatever relief its allegations and proof warrant. Our system of Code pleading plainly requires this result. Section 477 enjoins the liberal construction of a pleading in favor of the pleader, regardless of what form of action or plea he denominates it. Decisions in Code footnote; Cooper v. Baxley,194 S.C. 270, 9 S.E.2d 721, and cases cited; see alsoLorick Lowrance v. Caldwell, 85 S.C. 94, 67 S.E., 143
and Furman v. A.C. Tuxbury L. T. Co., 112 S.C. 71,99 S.E., 111.
Moreover plaintiff's right of recovery, if any, under the facts of this case, seems from the better considered authorities to rest upon implied contract, so that in the exact positions taken possibly both parties are wrong in their contentions, but we think in this case such is a matter of technicality and terminology and does not affect the merits.
In the nearest approach to the case in our reports, which has come to our attention, Rivers v. Liberty National Bank,135 S.C. 107, 133 S.E., 210, recovery was allowed upon the complaint of the depositor based apparently upon tort and stating alleged acts of negligence on the part of the bank, but no point of the procedure was there made.
Careful consideration has been given the authorities submitted by the respondent upon the foregoing point but we find nothing in them in conflict with what has been said and none of them is applicable to the case in hand. Illustrative however, of the general principle enunciated above, we quote from one of them, Farmers' Union Merc. Co. v. Anderson,108 S.C. 66, 93 S.E., 422, 424, the words of Mr. Justice Hydrick: "Under the old practice each form of action had distinctive earmarks, so that there was little or no difficulty in determining what kind of action the pleader intended to bring. But the Code requires only a statement of the ultimate facts constituting the causes of action; and, as precisely the same facts may give rise to an action ex contractuor ex delicto, at the pleader's election, and as the pleader is *Page 27 
not required to name his action, or to specifically declare his intention or indicate his election, it is often difficult to determine what kind of action was intended. In doubtful cases the question must be determined by the substance of the allegations, and such other facts and circumstances as may throw light upon the intention; every reasonable intendment being indulged in favor of that conclusion which will result in doing substantial justice between the parties." (Citations.)
Many authorities of other jurisdictions bearing upon on the main question made are found in the annotations in L.R.A., 1918-B, 576, 31 A.L.R., 1068 and 67 A.L.R., 1535. From these cases it is noted that there is almost complete unanimity in the holdings of the Courts that a forged or unauthorized endorsement of a check transfers no title and that the taker thereunder who collects the proceeds of the check from the drawee holds such proceeds for the true owner and must respond to the latter's action therefor in the absence of offsetting facts and circumstances. Furthermore, such was very clearly held by this Court in the case of Charleston Paint Co. v. Exchange Banking Trust Co., 129 S.C. 290, 123 S.E., 830, as well as in theRivers case, supra. See the several authorities approvingly cited in the Paint Co. case and to the same effect is Life Ins.Co. v. Edisto National Bank, 166 S.C. 505, 165 S.E., 178.
The primary rule of liability is well expressed in 7 Am.Jur., 432, 433, Banks, Par. 597, as follows: "Although there are a few scattered cases to the contrary, the general rule established by nearly all courts is that a bank or other corporation which, or an individual who, has obtained possession of a check upon an unauthorized or forged indorsement of the payee's signature, and has collected the amount of the check from the drawee, is liable for the proceeds thereof to the payee or other owner, notwithstanding they have been paid to the person from whom the check was obtained. The theory underlying this rule has been expressed in various ways, all of which may be summed up in the statement *Page 28 
that the possession of the check on the forged or unauthorized indorsement is wrongful, and when the money has been collected on the check, the bank, or other person or corporation, can be held as for moneys had and received."
Close examination is necessary to distinguish the case of Rivers, supra, from the facts of the instant controversy, except in behalf of the respondent it is said that in the Rivers case only the fraud of the depositor's bookkeeper was concerned while here it is that of an officer of the corporate depositor; but careful consideration of the facts disclosed by the record before us shows that with respect to deposits in the bank account, Rivers' bookkeeper had about the same authority as did Young. Both were authorized, expressly or impliedly, to endorse checks for deposit, but neither was authorized to cash checks payable to the depositor. Furthermore in the instant case the bank was put upon written notice by plaintiff's resolution that two officers must sign withdrawal checks, which fact or corresponding circumstance does not appear in the report of the Rivers decision. On the other hand the transactions involved in the Rivers suit extended over a much shorter period of time, and we think that whether the appellant in the case now before us is barred from recovery by its failure to discover the frauds over a period of about four years during which it was furnished monthly with itemized statements of its bank account or by any other relevant facts or combination of facts which may be presented, is a question of fact for determination by jury.
The clear and strong opinion in the Rivers decision [135 S.C. 107,133 S.E., 212], written by Mr. Justice Stabler, afterward Chief Justice of this Court, contains the following: "It does not appear that Rivers, either expressly or by implication, gave to Johnson any greater authority than to place the rubber stamp indorsement on the checks for deposit, or that he ratified the unlawful acts of Johnson by any acts or words on his part that might lead the bank to believe that Johnson was authorized to demand cash payment *Page 29 
of the checks on the rubber stamp indorsement. We cannot, therefore, escape the conclusion that the bank, in cashing the checks under these conditions, was guilty of gross negligence."
Enlightening also is the citation with approval by the Court of the excerpt, which need not be repeated here, from the case of Standard Steam Specially Co. v. Corn ExchangeBank, 220 N.Y., 478, 116 N.E., 386, L.R.A., 1918-B, 575.
Reference to the uniform negotiable instruments law, a part of our Code, discloses the provision contained in Section 6781 that when an instrument is payable to order, the usual form of a check, it may be negotiated by delivery after endorsement of the holder, which of course means a valid endorsement, not an unauthorized or forged endorsement. But neither this nor other provisions of this law have been relied upon in argument by either of the parties to the appeal.
We are likewise impressed by the words of the annotator on page 580 of L.R.A., 1918-B, as follows: "If the principal has conferred authority upon the agent to endorse in form for deposit, there is no implied or apparent authority to endorse generally; a general endorsement by the agent passes no title, and the principal may recover the instrument or its proceeds in whosoever hands it may come, in the absence of negligence or ratification."
Here there is no evidence of express ratification and the negligence mentioned in the last quotation properly refers, we think, to the acts and failures to act, if any, on the part of appellant whereby it may be found to be foreclosed from asserting against the bank the latter's ordinary liability for cashing the checks upon unauthorized endorsements. Appellant's conduct should be tested by the rule of average and reasonable care and prudence. This constitutes an issue of fact concerning which more than one reasonable inference may be drawn from the testimony in the record, and which therefore must be tried by jury under proper instructions of the Court. The case must be reversed for trial, on which account *Page 30 
we have refrained from comment upon the testimony any more than has been thought necessary for the decision of the appeal and we expressly disclaim any intention of passing upon the weight of it.
Respondent strongly argues the persuasive authority of the South Carolina case tried in the United States Court for the Western District, Glens Falls Ind. Co. v. Palmetto Bank, D.C., 23 F. Supp. 844, in which the decision of the appeal to the Fourth Circuit Court is reported in 104 F.2d 671. In that interesting case the assistant treasurer of Watts' Mills embezzled its funds apparently just as Young did in the instant case. However, he was in complete charge of the affairs of the mill at Laurens and the president, who lived in Greenville, testified that he had fully delegated all of his powers to the embezzler. The Court denied recovery against the bank, which had cashed the checks, upon the latter ground and held that the record established that the assistant treasurer was authorized to cash checks drawn to the order of the mill and that, therefore, payment to him of the checks in question was payment to the mill itself, and that when the checks were cashed by the defaulting officer of the corporation he was acting within the scope of his authority, in the cashing of course, not in the embezzling of the proceeds. Thus the facts involved were very different from those confronting us; here the cashing of the checks was not in the scope of Young's authority and there was an active, resident vice-president and general manager of the corporate appellant.
The present problem is nearer that presented in the North Carolina case of Edgecombe Bonded Warehouse Co. v. SecurityNat. Bank, 216 N.C. 246, 4 S.E.2d 863, although it was possibly a stronger case for the bank, and it was reversed for trial by jury as we think is necessary in this controversy. There the trial Court had erroneously directed a verdict for the plaintiff; the case was sent back and the appellate Court held the depositor's agreement not controlling and said, among other valuable things, that it was within *Page 31 
the province of the jury to determine the weight and credibility of the testimony, much of which latter was similar to that adduced in the trial of this case.
We do not think that the signature card is of any importance in this contest. It must be construed with the directors' resolution of appellant furnished the bank, and when this is done it is clear that the function of the card in this respect was to provide the bank with specimens of the signatures of the persons of whom two would sign checks, withdrawals from the deposit account. Its reference to "the transaction of other business" cannot be fairly held to reduce the requirement of two signatures for withdrawals, provided by the corporate resolution, or to enlarge the respective authority of the signers.
Reversed for new trial.
MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE and CIRCUIT JUDGE L.D. LIDE, ACTING ASSOCIATE JUSTICE, concur.