21716

PEOPLES LIFE INSURANCE COMPANY OF SOUTH CAROLINA, Appellant, v. COMMUNITY BANK, Respondent.

(292 S. E. (2d) 188)

*Clifford F. Gaddy, Jr.,* of *Gaddy & Davenport,* Greenville, *for appellant.*

*Russell W. Harter, Jr.,* of *Marchbanks, Chapman & Harter,* Greenville, *for respondent.*

May 27, 1982.

HARWELL, Justice: *

Appellant alleges the trial court erred in granting respondent's Motion to Strike the allegation of conversion and in granting respondent a nonsuit on the issue of negligence.

Appellant, a health, accident and life insurance company, entered into a contract with James M. Watt whereby he was to be a Managing General Agent with authority to solicit insurance on appellant's behalf. Mr. Watt had an insurance agency under the name of Watt & Associates which represented other insurance companies as well as appellant. Under his written contract with appellant, he was to hold all money received on

---

* Both Article V, Section 9, of the Constitution of South Carolina and Section 14-3-360 of the Code of Laws of South Carolina (1976), require "... the concurrence of three of the justices ... for a reversal of the judgment below." Inasmuch as the Court is evenly divided and three justices do not agree to reversal, the rulings of the lower court are affirmed.

behalf of appellant in a fiduciary capacity until immediately and properly remitted to appellant. In addition, Watt was authorized to receive checks made payable to appellant or Watt & Associates. If he received checks payable to appellant, he was to remit 100% of the premium, but if he received checks payable to Watt & Associates, he could remit the net premiums. He had no authority to endorse checks payable to appellant.

During December 1978 and January 1979, Watt obtained twenty-two (22) checks, totaling $3,364.00 made payable to appellant. The checks were all stamped by Watt "For Deposit Only, Peoples Life Insurance Company Watt Assoc." and deposited in Watt's "Watt & Associates" account with respondent. When appellant received inquires from several alleged customers, it discovered that Watt had been collecting premiums which had not been remitted to it. After receiving photostatic copies of the twenty-two checks from respondent, appellant issued the insurance policies to the customers who had previously paid Watt by check. Neither respondent nor Watt paid appellant the $3,364.00, and this action for conversion and negligence followed.

Under S. C. Code Ann. § 15-13-60 (1976), a motion to strike irrelevant or redundant matter is addressed to the sound discretion of the trial court and the court's decision will not be reversed absent an abuse of discretion. *Totaro v. Turner*, 273 S. C. 134, 254 S. E. (2d) 800 (1979). We agree with appellant that its allegation of conversion was erroneously stricken from the complaint.

Conversion of an instrument is governed by S. C. Code Ann. § 36-3-419 (1976):

(1) An instrument is converted when . . .

(c) is paid on a forged indorsement.

(3) Subject to the provisions of this act concerning restrictive endorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

We stated in *Palmetto Compress and Warehouse Co. v. Citizens and Southern National Bank,* 200 S. C. 20, 20 S. E. (2d) 232, 235 (1942) that a forged or unauthorized endorsement of a check transfers no title, and the taker thereunder who collects the proceeds of the check from the drawee holds such proceeds for the true owner and must respond to the latter's action therefor in the absence of offsetting facts and circumstances. *See,* 10 Am. Jur. (2d) *Banks* § 632 (1963) and Annot., 100 A.L.R. (2d) 670, 673 (1965). In the *Palmetto Compress* case, Palmetto's treasurer cashed checks at the defendant bank by endorsing his name and title. On file at the bank were signatures of Palmetto's authorized endorsers as well as a resolution requiring at least two of the authorized signatures on checks. Although no one forged a signature this Court held the endorsement was nevertheless unauthorized because of the two signature requirement.

We realize the *Palmetto Compress* case was decided prior to our adoption of the Uniform Commercial Code. However, the South Carolina Reporter's Comments state that S. C. Code Ann. § 36-3-419(1)(c) merely codified the common law rule as expressed in that case and in *Charleston Paint Company v. Exchange Banking and Trust Company,* 129 S. C. 290, 123 S. E. 830 (1924).

We believe, therefore that appellant properly stated a cause of action for conversion and should have been allowed to offer evidence on that issue.

At trial appellant offered proof of respondent's negligence in allowing Watt to deposit in the Watt and Assoc. account the twenty-two checks payable to appellant. At the close of appellant's evidence, the trial court granted respondent a nonsuit. We think a jury issue was created, and therefore, the nonsuit was improper.

When a trial court considers a motion for a nonsuit, it must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. It is not to weigh the evidence but merely to determine whether there is any relevant competent evidence reasonably tending to establish the material elements of the plaintiff's case. If more than one reasonable inference can be drawn, or if the inferences to be drawn are in doubt, a jury issue is created. *Dunsil v. E. M. Jones Chevrolet Co., Inc.,* 268 S. C. 291, 233 S. E.

(2d) 101 (1977); *Chaney v. Burgess,* 246 S. C. 261, 143 S. E. (2d) 521 (1965).

A bank's defense to an action under S. C. Code Ann. § 36-3-419 is that it acted in good faith and in accordance with reasonable commercial standards applicable to the business of banking. There is no evidence of any authority given by appellant to Watt to endorse, cash, or deposit checks made out to appellant, nor is there any evidence that respondent ever checked or questioned Watt's authority to endorse and deposit appellant's check into the account of Watt & Associates. The burden of proving that it acted in good faith and in accordance with reasonable commercial standards is on the bank because the exception set out in S. C. Code Ann. § 36-3-419(3) (1976) is an affirmative defense. *National Bank of Ga. v. Refrigerated Transport,* 147 Ga. App. 240, 248 S. E. 496 (1978) is a similar case. There the plaintiff's collection agent had deposited checks in its general corporate checking account with the defendant bank. Although the checks plainly indicated plaintiff as payee, the agent stamped either its own name or its name "as agent for" plaintiff. There, as here, the evidence at trial was undisputed that the endorsements were unauthorized within the meaning of U.C.C. 1-201. The court upheld a judgment n. o. v. for the plaintiff, stating:

> The endorsements were irregular enough on their face to raise some question as to their validity; and certainly when the checks were offered for deposit into the general corporate checking account of one not the payee, NBG (the bank) had a duty to inquire to ascertain the authority of UAS (plaintiff's agent) to endorse and deposit RTC's (plaintiff payee) checks .... Therefore, failure to inquire into the validity of the endorsements in question precluded NBG from asserting the defense of commercial reasonableness ... as a matter of law. 248 S. E. (2d) at 500.

We believe the granting of the nonsuit was error.

GREGORY, J., concurs.

LEWIS, C. J. and LITTLEJOHN, J, dissent.

NESS, J., not participating.

LITTLEJOHN, Justice (dissenting):

I respectfully dissent and would affirm the action of the trial judge in both striking from the Complaint the allegations as to conversion and the granting of the non-suit after presentation of the insurance company's case.

It is undisputed, and the Plaintiff insurance company alleges in the Complaint, "that James M. Watt was a Managing General Agent for Peoples Life Insurance Company of South Carolina; . . . ." By the terms of the written agreement between Plaintif and Watt, it was provided that: "All money received in behalf of the Company shall be held by M. G. A. in a fiduciary capacity and shall be immediately and properly remitted to the Company. Failure to remit all such money shall terminate this contract."

James B. Jones, Executive Vice President, Secretary and Treasurer of the Plaintiff testified that Watt ". . . could solicit applications, and receive money for the application made payable to Peoples Life Insurance Company, or, as the Managing G. A. he had the prerogative to have the checks made to his own agency." Mr. H. B. Short, First Vice President of the Plaintiff testified as follows:

> Q. Now, with respect to collecting the premiums for the policies, what was Mr. Watt's authority?
> A. He was to write the policy and accept the premium.
> Q. All right, how was he to collect the premium, in terms of what?
> A. By cash or by check.
> Q. All right, and how could the checks be made payable?
> A. They could've been made payable to Peoples Life Insurance Company or Watts Associates, whichever choice he wanted to use.

It was the testimony of these two officers that Watt had been orally instructed that he could cash premium checks made payable to Watts Associates or to Watt, keep the earned

premium and remit the balance to the Plaintiff, but if a check was made payable to the Plaintiff, the same should be forwarded to the Plaintiff, which, in turn, would send the earned commmissions to Watt.

I agree with the trial judge, who, in his ruling, said:

> ... the designation of Managing General Agent is completely repugnant in trying to describe some one as being an independent contractor because there's no such thing as I understand it, it's an independent agent or an independent contractor who is, in fact, designated as an agent.
>
> If you look at the Contract, it does not prohibit Mr. Watt from doing what he said (sic). Now, there is some oral conversation that came out, additionally, that even if you accept the oral conversation, he had the right to take checks made payable to his own agency or to Peoples Life Insurance. To me, it would seem that if he had the authority to take one to Watts agency, he would also have the authority to take one to Peoples Life and, in effect, endorse it to Watts agency. I can't see the difference.
>
> There is no showing of any lack of due care on the part of the bank. Had they been submitted the Contract, the Contract does not prohibit doing what he said. It made him a fiduciary, but it didn't say in what manner those monies are to be deposited and what manner they are to be paid.

The cases of *Palmetto Compress* and *Charleston Paint Company* cited in Justice Harwell's opinion are not persuasive. In *Charleston Paint Company*, the check had been obviously altered on its face. This Court said that "... it bore unmistakable evidence that it had been altered. ..." In *Palmetto Compress*, the bank had been furnished with corporate resolutions stating that two signatures were required but the bank honored one signature instead.

The contention that the Plaintiff should have been allowed to proceed on the theory of conversion is without merit. This appeared obvious from the pleadings. In the light of the testimony submitted, it becomes more obvious that the judge's striking of the conversion allegations was

proper. Plaintiff could, at most, proceed to trial on the theory of a debt; failure to pay a debt does not amount to a conversion.

LEWIS, C. J., concurs.