13457

LIFE INS. CO. OF VIRGINIA v. EDISTO NAT. BANK OF
ORANGEBURG *ET AL.*

(165 S. E., 178)

*Messrs. Thomas, Lumpkin & Cain,* for appellant,

*Messrs. Lide & Felder* and *C. E. Summers,* for respond-
ent,

July 28, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The appellant, which we shall call the insurance company, issued its check on the National Loan & Exchange Bank of Columbia, S. C.—which we shall call the Columbia bank—in the sum of $199.58, dated December 22, 1930, and made payable to the order of Susie Castleberry. This check was in payment of the cash surrender value of three certain life insurance policies carried by her in it—which policies were to be surrendered by her on receipt of the check. It was sent to one D. B. Edge of Orangeburg, who was the soliciting agent of the company in that county, to be delivered by him to Mrs. Castleberry, and he was to receive from her the policies and receipt. Thereafter the check was presented by D. B. Edge to the Edisto National Bank of Orangeburg, which we shall call the Edisto bank, and by his direction was placed to his credit in his personal account "as Agent." It bore his indorsement and the purported prior indorsement of Susie Castleberry. The Edisto bank stamped the check with its indorsement and guaranty of all prior indorsements, and forwarded it to the Columbia bank, which paid it and charged it to the account of the insurance company. Immediately thereafter Edge drew his check on his account as agent in the Edisto bank, in the sum of $233.36, in favor of the insurance company, which was duly paid. Thereafter it came to the attention of the insurance company that the check for $199.58 had never been delivered to Mrs. Castleberry; that Edge had given to her $43.58 in cash and his personal check, as agent, drawn on the Edisto bank in the sum of $156.00; payment of which check was refused on the ground of "insufficient funds." When these facts were brought to the attention of the insurance company, it sent to Mrs. Castleberry its check for $156.00, which was duly

paid. Thereupon the insurance company made demand upon the Columbia bank for reimbursement to the extent of $156.00, basing its claim upon the ground that Mrs. Susie Castleberry, the payee of the check, had not indorsed it; that her purported indorsement was a forgery. A question arose between the insurance company and the bank as to which of them, if either, was liable. It was agreed that one action should be brought in Orangeburg County to determine the issue. If the issue was decided against the Columbia bank, it would doubtless bring its action against the Edisto bank for recoupment. If the issue was decided against the Edisto bank, that would absolve the Columbia bank of liability. By consent of counsel the case was heard by his Honor, Judge Mann, of the First Circuit, without a jury. The testimony was taken before him, and he heard the arguments of counsel. Later he filed his decree, holding that there was no liability on the part of the Edisto bank and hence none on the part of the Columbia bank, and dismissing the complaint. His decree was based upon the general grounds that the proof was not sufficient to sustain the plea that the indorsement of Susie Castleberry was forged; that there was no proof of negligence on the part of the Edisto Bank in not assuring itself of the genuineness of the signature of Susie Castleberry; that the insurance company had put it in the power of D. B. Edge to effect the fraud by sending the check to him, and, since one of two innocent persons must suffer, the penalty should fall on the insurance company, who made the fraud by Edge possible.

From this decree the insurance company appeals, and by nine exceptions alleges error on the part of the trial Judge in the particulars therein set out. However, counsel for appellant say in their brief: "For the purposes of this argument these several specifications will not be treated separately, as the primary and vital question involved can be reduced to the single proposition relating to the liability of

a bank which diverts the proceeds of a check upon a forged endorsement."

We concur in the view that the solution of this proposition will decide this case, and we shall adopt that line of consideration.

Preliminary to the discussion of the legal phases of the appeal, it is necessary to dispose of certain questions of fact.

The respondent, the Edisto bank, does not concede that the indorsement of Susie Castleberry's name on the check was a forgery. We think there can be no reasonable doubt that the indorsement of Susie Castleberry's name on the check was a forgery by D. B. Edge, or by his procurement. She testified that she had never seen the check until the day she saw it at the trial of the case; that she could not write; that she had not indorsed the check, and had not authorized any one to indorse it for her. It is true that she testified that her son, Fred, did her writing for her, but she did not say, nor did any one else say, that she authorized Fred to indorse this check for her. On the contrary, she said she never authorized any one to do so. The fact that Edge paid $43.58 in cash to Fred for her might indicate that he procured Fred to write his mother's name on the check, but there is no proof whatever that he had any authority to do so. The fact that Edge gave Susie Castleberry his personal check as agent for $156.00, and that he indorsed the check as agent and deposited it in the Edisto bank to his personal credit, as agent, and that he at once sent to the insurance company his check on the Edisto bank in the sum of $233.36, leads irresistibly to the conclusion that he owed the insurance company money, that he was in arrears with it as agent; that, when he received the $199.58 for Mrs. Castleberry, he conceived the plan of using it to straighten his account with the company, hoping, doubtless, that he could later protect the check for $156.00 he had given Mrs. Castleberry.

The Edisto bank further contends that, even if the indorsement of the check was a forgery, the insurance company was the beneficiary. This contentiton will not stand analysis. It will be conceded that the check for $233.36 sent to the insurance company by Edge included the proceeds of the $199.58 check; still there can be no reasonable doubt that it went to pay obligations of Edge to the insurance company, and in no wise went for the purpose of replacing the money diverted from it by Edge's unlawful use of the Castleberry check.

This defendant further contends that as the agent for the insurance company Edge was intrusted with the check for the purpose of making settlement with Mrs. Castleberry, and that the insurance company is bound by his acts in that connection as its agent.

That a principal is bound by the acts of the agent done within the scope of his authority is elementary. This defendant's citation from 21 R. C. L., 853, correctly states the proposition applicable to this case: "Being clothed with power to do a particular act, the agent will be deemed also to have whatever authority attaches to the doing of the act, *as is necessary to its performance.*" (Italics added.)

The commission intrusted to Edge by the insurance company was to deliver the check to Susie Castleberry upon her surrender of the policies and giving her receipt for the check. He was not commissioned to do anything more. Certainly he was not authorized by the insurance company to place Susie Castleberry's name, by way of indorsement, on the check. It had no such authority itself; hence it could not have given it to its agent. The placing of the indorsement of Mrs. Castleberry on the check by the agent of the company was not necessary to its performance—the performance of his agency; it was not done within the scope of his agency.

We do not think Section 6774, Vol. 3, Code 1932 (a provision of the Negotiable Instruments Law), sustains the

position taken by the Edisto bank. That section is as follows:

"*Forged Signature.*—Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge thereof, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

We hold that neither Susie Castleberry nor the insurance company has done anything which precludes them or either of them from setting up the forgery, or want of authority to sign the name of Susie Castleberry on the check as indorsement. If Fred Castleberry placed it there, it was without the authority of his mother, and it must have been done by the procurement of Edge for his own sinister purpose.

Nor do we think Section 6772 protects the Edisto bank. That section provides:

"*Signature by Procuration.*—A signature by '*procuration*' operates as notice that the agent has but a limited authority to sign, and the principal is bound only in case the agent in so signing acted within the actual limits of his authority."

The indorsement of the check by Edge as agent, or Fred Castleberry by the procurement of any one, made it all the more incumbent on the Edisto bank to assure itself that they "*acted within the actual limits of their authority.*"

"If the original endorsement was authorized, the diversion of the funds after endorsement would not make it a forgery; but if the original endorsement was unauthorized, parties dealing with the wrongdoer, and innocent parties alike, were bound to know the lack of the agent's authority to convey title away from the true owner to anyone." *Rivers v. Bank,* 135 S. C., 107, 133 S. E., 210, quoting from *Stand-*

*ard S. S. Co. v. Corn Ex. Bank,* 220 N. Y., 478, 116 N. E., 386; L. R. A., 1918-B, 575.

"If alteration in check, making it payable to payee's attorney rather than original payee, was made by such attorney without authority, the transfer of the check by the indorsement of the attorney, when he deposited it in his account as attorney in defendant bank, *carried no title; and the bank, having received the proceeds of the check and paid them out upon such attorney's orders, was obligated to account therefor to original payee.*" (Italics added.) Seventh syllabus in the case of *Charleston Paint Co. v. Exchange, etc., Co.,* 129 S. C., 290, 123 S. E., 830.

His Honor, the Circuit Judge, held that, in order that the Edisto Bank be held liable for that it accepted the Castleberry check, it must have been guilty of some negligence; and he absolved it of negligence. He held further that, if the Edisto bank was guilty of negligence, the insurance company was also guilty of negligence, because, by sending the check to its agent, Edge, it put it in the power of Edge to perpetrate the fraud; therefore he held the Edisto bank not to be liable, under the principle that, "where there is a loss to be sustained, the party greatest in fault or the party without whose act the loss would not have occurred, will be chargeable therewith."

We do not think that the facts of this case bring it within the purview of the salutary rule of law invoked by his Honor.

This brings us to the crucial question underlying the whole case, viz.: What is the measure of the liability of a bank which cashes a check upon which the name of the payee has been forged?

The question is specifically and categorically answered by our own Courts, and the Courts of many other jurisdictions. The question was considered in the case of *Charleston Paint Co. v. Exchange Banking & Trust Co.,* 129 S. C., 290, 123 S. E., 830, 832; from the opinion therein we make these several excerpts:

"Where a bank accepts a check bearing a forged indorsement, and places it to the credit of one presenting it, and has it collected, it is liable to the true owner, *though it acts in good faith, and without knowledge of the forgery.*" Taken from *Farmer v. Bank,* 100 Tenn., 187, 47 S. W., 234.

"If a negotiable instrument, having a forged indorsement, come into the hands of a bank, and is collected by it, the proceeds are held for the rightful owners of the paper, and may be recovered by them, although the bank gave value for the paper or has paid over the proceeds to the party depositing the instrument for collection." Taken from 1 Morse on Banking, § 248, citing a number of authorities.

"*Buckley v. Bank,* 35 N. J. Law, 400, 10 Am. Rep., 249, was a case where a check, with the name of the payee forged upon it, came to the possession of the defendant innocently, and was collected by it. Having done so, it was compelled to respond to the claim of the true owner upon his discovery of the loss and fraud, though the bank had already accounted for the proceeds to the party from whom it had obtained possession. The Court said:

" 'It is clear, then, that nothing passed to the defendants by virtue of the forged indorsement. The plaintiff's right to the check remained precisely as it was before his name was forged. The check, therefore, when the defendants obtained the money on it, was the property of the plaintiff, and in that case he may, as we have seen, recover the amount in this action, as money received by the defendants to his use.' "

"None of them [authorities cited to the Court], and none that we have been able to find, exempt a bank from liability to refund money which it. has received on a forged check taken by it directly from the forger. * * * The Courts with practical unanimity go at least to the extent of holding that a bank which takes a forged check without taking due care to ascertain its genuineness must refund the money

paid to it by the drawee bank." *Newberry Savings Bank v. Bank of Columbia,* 91 S. C., 294, 74 S. E., 615, 617, 38 L. R. A. (N. S.), 1200; see note to *First National Bank v.. Bank of Wyndmere,* 10 L. R. A. (N. S.), 58.

"Where a check is presented by a third person with the alleged endorsement of the payee the bank must ascertain, as a general rule, at its peril, whether the endorsement is good or forged; the genuineness of the last endorsement on a check does not relieve a bank from looking to the genuineness of preceding endorsements. Even though a check be made payable to a person, and another person of precisely the same name, or initials, comes wrongfully, or accidentally, into possession of the same, endorses it and obtains the money on it from bank, still the bank is liable to make good the amount to the drawer. The endorsement is a forgery." 3 R. C. L., § 171, pages 542, 543. Many cases in support of the rule are cited in the footnotes.

The case of *First National Bank of Waycross v. Guaranty Life Insurance Co.,* decided by the Court of Appeals of Georgia, May 12, 1932, and reported in 164 S. E., 212, 213, is in such exact accord with the facts of this case and the principle of law applicable that we quote from it the entire body of the opinion of the Court save the repetition of the various authorities cited: "Where an insurance company as drawer intrusts to its agent a check to be delivered to the payee, the agent, without more, has no real or apparent authority to deliver the check to any other person, and where he wrongfully delivers the check to another, whom he procures to impersonate the payee and to forge the payee's indorsement thereon, and whom he then introduces to a bank which pays the check upon such forged indorsement with the additional indorsement of the agent, the bank, as between itself and the drawer, must bear the loss. Under such facts the bank was not relieved of its own duty of identification and acted at its peril in paying the check to any person other than the payee named therein. If the agent had himself forged the indorsement and imper-

sonated the payee the bank would not have been protected, and the case is not different merely because the agent colluded with another to assist him in the perpetration of the fraud"—citing a long list of authorities.

The Court said further:

"Under the above rulings the bank which paid the check did not acquire the title thereto, and as against the drawer, could not demand payment, or bring suit thereon. The case is not altered by the fact that the drawer in writing the check placed the name and address of the agent in the lower left-hand corner, this being a mere private memorandum, not purporting to confer any authority upon the agent, or to affect any right of the payee."

"Liability to true owner of check, which because of alteration was a forged instrument, of bank which had collected it and paid out the proceeds to one depositing it, was not affected by the bank's actual or constructive knowledge or lack of knowledge, that the check had been forged, *for, if forged, it was void, regardless of bank's diligence or negligence in discovering the forgery.*" (Italics added.) Syllabus 8 of *Charleston Paint Co. v. Exchange, etc., Co.,* 129 S. C., 290, 123 S. E. 830.

The Edisto National Bank accepted from, or through, the National Loan & Exchange Bank the check issued by the Life Insurance Company of Virginia to Susie Castleberry, upon the forged indorsement of the payee, and paid out the proceeds of the collection upon the order of the person who deposited the check. There can be no doubt of its liability to make good to the person, or party, entitled thereto, the loss he or it has sustained.

The Edisto bank placed its indorsement on the check and guaranteed all prior indorsements. If, therefore, the Columbia bank were held liable to the insurance company, it would have its recourse upon the Edisto bank. Therefore, under the agreement upon which the case was heard, the National Loan & Exchange Bank is dismissed from the case.

It is the judgment of the Court that the decree appealed from be reversed, and that the case be remanded to the Circuit Court for Orangeburg County, with directions to enter judgment in favor of the Life Insurance Company of Virginia against the Edisto National Bank of Orangeburg in the sum of $156.00.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER and CARTER, and MR. W. C. COTHRAN, ACTING ASSOCIATE JUSTICE, concur.