**LAWYERS TITLE INSURANCE CORPORATION, a corporation, Plaintiff,**

v.

**BANK OF FORT MILL, a corporation, Defendant.**

**Civ. A. No. 2261.**

United States District Court
W. D. South Carolina,
Rock Hill Division.

Nov. 21, 1958.

Bailey & Buckley, Charleston, S. C., for plaintiff.

Wm. C. Boyd, Columbia, S. C., Sinkler, Gibbs & Simons, Charleston, S. C., for defendant.

WYCHE, Chief Judge.

The plaintiff Title Insurance Company insured the title to property in Charleston County, South Carolina, in one Berford F. Sims, for a mortgage loan to Sims from Perpetual Building and Loan Association of Fort Mill, South Carolina. The title insurance for Perpetual was procured by, and the loan disbursed by one Robert B. Stall, Jr., an attorney at law of Charleston, South Carolina. It appears that Stall falsely certified the title as being in Sims, whereas Sims never had title to the property in question, and that Stall, without specific authority, signed Sims' name to the note and mortgage representing the loan.

Both Sims and Stall were named as payees of Perpetual's loan proceeds check, drawn on the Bank of Fort Mill, and Stall, again without specific authority, endorsed Sims' name thereon as well as his own. Sims received none of the funds.

When the defect in the title came to light, the plaintiff, under the terms of its title insurance policy, paid the mortgagee its loss and plaintiff now brings this action against the Bank of Fort Mill, alleging that Bank's wrongful payment of the check under a forged endorsement, and further alleging that the plaintiff, by reason of its payment of the loan to the mortgagee under the title policy, became subrogated to the rights of the depositor-insured thereunder, and has the right to bring this suit against the defendant Bank of Fort Mill as a violation of the defendant's contract with such depositor that the depositor's funds not be paid out from its account except on the proper order of the depositor.

In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact.

1. The plaintiff is engaged in the business of writing various types of real estate title insurance throughout the United States, including the State of

South Carolina, and its annual premium income has for many years amounted to several million dollars.

2. In 1949, the plaintiff placed one Robert B. Stall, Jr., an attorney at law of Charleston, South Carolina, on its so-called approved list of title attorneys, thereby qualifying Stall to certify titles to the plaintiff for insurance.

3. In December of 1952, on the basis of certificates and information furnished it by Stall, the plaintiff insured the title of one Berford F. Sims for a mortgage loan from Perpetual Building and Loan Association of Fort Mill, South Carolina. Perpetual held a purported mortgage from Sims, dated December 24, 1952, recorded in the proper public office in Charleston County, South Carolina, purporting to cover real estate in that County. Although Sims' name appears on both the mortgage and the note secured thereby, and the name of his wife appears on the renunciation of dower on the mortgage, neither Sims nor his wife actually signed the same, but the said names appear to have been written by Stall.

4. The plaintiff issued its title policy No. 545–281, insuring, among other things, that the fee simple title to the property described in the mortgage, at the date of the policy, was vested in Sims; however, the title to the said property was never vested in Sims and has never been vested in him, since it appears that Stall's certification to the plaintiff for the purpose of obtaining insurance on Sims' title was false.

5. Perpetual, for the purpose of closing its purported loan to Sims, issued its $6,800 check dated December 23, 1952, drawn on the defendant Bank of Fort Mill of Fort Mill, South Carolina, payable to the order of Berford F. Sims and Robert B. Stall, Attorney; although it does not specifically appear in the record, it seems certain that Perpetual delivered this check to Stall for handling the closing of the purported loan.

6. This check for the loan proceeds, bearing purported endorsements by the payees thereof, was deposited in and credited to the account of Stall, on or about December 24, 1952, by the First National Bank of South Carolina, Charleston, South Carolina. In due course the check was transmitted to the Bank of Fort Mill which paid the First National Bank of South Carolina, and charged Perpetual's account therefor. The First National Bank of South Carolina effected the customary endorsement on the check: "All prior endorsements guaranteed" before forwarding it to the Bank of Fort Mill.

7. The defendant Bank of Fort Mill had no reason to doubt the genuineness of the endorsements on this check and paid the same in the ordinary course of business.

8. Berford F. Sims did not write his endorsement on this check, nor did he know, until several months after its negotiation, that his endorsement had been made thereon by Stall.

9. In connection with another piece of property, Sims, some time in 1952, signed some mortgage papers "to help Stall out", although Sims knew at that time that he did not own the property described in the mortgage. For helping Stall out, Sims received $300 in cash from Stall. In connection with another piece of property, Sims obtained a signed receipt from Stall for $300, representing a purported down payment in that amount, although Sims had not, in fact paid Stall $300.

10. Hartford Federal Savings and Loan Association of Hartford, Connecticut, succeeded to the interest of Perpetual in this mortgage by assignment of the same, late in December, 1952.

11. Some time in the late spring or early summer of 1953, it was learned by Hartford that the lien of its mortgage was worthless because the purported mortgagor had no title to the property described therein.

12. The plaintiff made payment to Hartford of its claim for loss under the worthless mortgage and Hartford executed to the plaintiff an assignment, without recourse, of the said mortgage and the note secured thereby.

13. The original mortgagor, Perpetual, also executed an assignment to the plaintiff of all claims, demands or causes of action that it may have against any person, arising out of the Sims loan, note and mortgage, or out of defects therein, or in the title to the property described therein, or in the attorney's certificate or certificates, or other documents in connection therewith or arising out of the $6,800 loan proceeds check, or out of misappropriation of funds, negligence, or any other matters in connection with said mortgage loan. This instrument further authorized the plaintiff to take all legal measures in Perpetual's name or in its own name, to enforce such rights, and Perpetual therein undertook to give all possible aid and cooperation, other than financial, to the plaintiff in such proceedings.

14. The First National Bank of South Carolina has agreed that in the event the defendant Bank of Fort Mill be liable to the plaintiff for the payment of the check in question, the said First National Bank will, in turn, be liable to the Bank of Fort Mill to the same extent, because of its relationship as the forwarding bank, and because of the endorsement stamp hereinabove mentioned.

15. The plaintiff Lawyers Title has been reimbursed for all or the greatest part of its loss in the premises by St. Paul Mercury Indemnity Company, under the terms of a bonding or indemnity agreement between the plaintiff and that Company; St. Paul Mercury Indemnity Company has similarly agreed that it will be bound and concluded by the final adjudication in this matter, in the same manner as if it were a party plaintiff.

### Conclusions of Law.

1. This is a diversity case, brought by the plaintiff, a Virginia Corporation, against the defendant Bank of Fort Mill, a South Carolina Corporation; the amount involved met the jurisdictional requirement at the time the suit was instituted, and the court has jurisdiction of the parties and the subject matter.

2. The endorsing of Sims' name on the check of Perpetual was in law a forgery.

3. It is almost universally true that as between a bank and its depositor, the bank which accepts and pays a check bearing a forged endorsement is liable to the depositor therefor, regardless of negligence, and even though it act in good faith and without knowledge of the forgery. This general rule has been applied by the Supreme Court of South Carolina in Life Ins. Co. of Virginia v. Edisto Nat. Bank, 1932, 166 S.C. 505, 165 S.E. 178.

4. This general rule, of course, is subject to exceptions, such as where the drawer is negligent, or guilty of conduct amounting to estoppel. Ellis Weaving Mills v. Citizens & Southern Nat. Bank, D.C.W.D.S.C.1950, 91 F.Supp. 943, affirmed, 4 Cir., 184 F.2d 43; Glens Falls Indemnity Co. v. Palmetto Bank, D.C. W.D.S.C.1938, 23 F.Supp. 844, affirmed, 4 Cir., 104 F.2d 671, 672.

5. The South Carolina courts are in accord with the general rule that the right of subrogation has its origin in the general principles of equity and will be applied or not, according to the dictates of equity and good conscience, and considerations of public policy, because it rests upon the maxim that no one should be enriched by another's loss. Globe & Rutgers Fire Ins. Co. v. Foil, 1938, 189 S.C. 91, 200 S.E. 97. Subrogation is an equitable right and will be enforced or not, according to the dictates of equity and good conscience. Powers v. Calvert Fire Ins. Co., 1950, 216 S.C. 309, 57 S.E.2d 638, 16 A.L.R.2d 1261.

6. Defendant agreed with its depositor to be absolutely liable. If this standard is burdensome to defendant it must be said that defendant voluntarily assumed this obligation in consideration of its depositor's account.

The contract of Lawyers Title Insurance Corporation with Perpetual clearly provided as part of the consideration that Lawyers Title will have all rights of sub-

rogation. Paragraph 5 of Conditions and Stipulations in Policy No. 545–281.

The policy was issued to protect Perpetual and its assignees. It was not designed to protect the defendant. Perpetual got the protection it bought and Lawyers Title should be allowed the remedies for which it contracted in the event of loss.

The record shows that if recovery is allowed to plaintiff the actual loss will be paid by the First National Bank of South Carolina which guaranteed the check involved to the defendant. This is where the loss should be because the First National Bank actually dealt with Stall. It handled his account and accepted the check bearing the forged endorsement and it assumed the responsibility for the genuineness of the endorsement.

Perpetual placed the borrower's name on the check in order to protect itself from the very thing which happened. The bank by taking the forged endorsement unwittingly allowed Stall to consummate his fraud.

If the check of Perpetual had not been honored, Perpetual and its assignees would have suffered no loss. Perpetual would still have had its funds and no matter how invalid the title might have been without loss there could have been no claim against plaintiff.

There was no loss until the check was cashed. The First National Bank of South Carolina, which is bound by this suit, honored the check initially for its depositor Stall. It guaranteed the endorsement of Sims to defendant. It is only just that the First National Bank be required to honor its guarantee.

Defendant has argued that the fact that plaintiff is a subrogee is an equity in defendant's favor. Since the liability of the bank to its depositor and plaintiff to Perpetual rise under different obligations, plaintiff has never owed any duty to defendant, therefore, there is no reason for balancing equities.

I can see no reason why the bank should not pay its liability to the plaintiff since it admits it is liable to its depositor.

Judgment should be for the plaintiff, and

It is so ordered.

Counsel may submit appropriate order accordingly.